Opinion for the court filed by Chief Judge PROST in which Circuit Judges NEWMAN, LOURIE, DYK, O’MALLEY, and REYNA join. Opinion concurring-in-part, dissenting-in-part filed by Circuit Judge HUGHES in which Circuit Judges MOORE, WALLACH, TARANTO, and CHEN join.
*1315 PROST, Chief Judge.
We convene en banc to resolve whether, in light of the Supreme Court’s recent decision in Petrella v. Metro-Goldwyn-Mayer, Inc., — U.S. -, 134 S.Ct. 1962, 188 L.Ed.2d 979 (2014), laches remains a defense to legal relief in a patent infringement suit. We conclude that Congress codified a laches defense in 35 U.S.C. § 282(b)(1) that may bar legal remedies. Accordingly, we have no judicial authority to question the law’s propriety. Whether Congress considered the quandary in Pe-trella is irrelevant — in the 1952 Patent Act, Congress settled that laches and a time limitation on the recovery of damages can coexist in patent law. We must respect that státutory law.
Nevertheless, we must adjust the laches defense in one respect to harmonize it with Petrella and other Supreme Court precedent. We emphasize that equitable principles apply whenever an accused infringer seeks to use laches to bar ongoing relief. Specifically, as to injunctions, considerations of laches fit naturally within the eBay framework. In contrast; Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526 (1888), and Petrella counsel that laches will only foreclose an ongoing royalty in extraordinary circumstances.
I. BackgRound
The present dispute arose out of litigation concerning adult incontinence products. SCA alleges that First Quality, a competitor in the adult incontinence products market, infringes U.S. Patent No. 6,375,646 ('646 patent). SCA first contended that First Quality’s Prevail® All NitesTM product infringes the '646 patent in a letter sent to First Quality on October 31, 2003. The correspondence explained:
It has come to our attention that you are making, selling and/or offering for sale in the United States absorbent pants-type diapers under the name Prevail® All Nites™. We believe that these products infringe claims of [the '646 patent].
We suggest that you study [the '646 patent]. If you are of the opinion that the First Quality Prevail® All Nites™ absorbent pants-type diaper does not infringe any of the claims of this patent, please provide us with an explanation as to why you believe the products do not infringe. If you believe that the products do infringe, please provide us with your assurance that you will immediately stop making and selling such products.
J.A. 544.
First Quality responded on November 21, 2003 and claimed the patent was invalid:
As you suggested, we studied [the '646 tent].... In addition, we made a cursory review of prior patents and located U.S. Patent No. 5,415,649, (“the '649 Patent”), which was filed in the United States on October 29, 1991 and is therefore prior to your client’s '646 Patent. A review of Figs. 3 and 4 of the prior '649 Patent reveals the same diaper construction claimed by the '646 Patent. Thus, the prior '649 Patent invalidates your client’s '646 Patent. As you know, an invalid patent cannot be infringed.
J.A. 547. SCA and First Quality ceased communications regarding the '646 patent after First Quality’s response. However, on July 7, 2004, SCA requested reexamination of the '646 patent in light of the '649 patent. SCA did not notify First Quality of the reexamination because, in SCA’s view, U.S. Patent and Trademark Office (“PTO”) reexaminations are public and First Quality could follow the proceedings itself. Yet, from First Quality’s point of view, SCA dropped its infringement allega *1316 tions against First Quality after First Quality argued the patent was invalid in the November 21st letter.
The PTO instituted reexamination on the '646 patent and, on March 27, 2007, confirmed the patentability of all twenty-eight original claims and issued several other claims SCA added during reexamination. Meanwhile, First Quality invested heavily in its protective underwear business. In 2006, First Quality expanded its line of adult incontinence products. In 2008, First Quality acquired Tyco Healthcare Retail Group LP, which had several lines of competing products, and in 2009 First Quality spent another $10 million to purchase three more lines of protective underwear products. SCA was aware of First Quality’s activities, but never mentioned the '646 patent to First Quality during this time.
On August 2, 2010 — over three years after reexamination concluded — SCA filed a complaint alleging that First Quality infringes the '646 patent. Service of the complaint was the first time in nearly seven years that SCA had communicated with First Quality regarding the '646 patent. The district court proceeded with discovery and issued a claim construction order. First Quality then moved for partial summary judgment of noninfringement and for summary judgment of laches and equitable estoppel. The district court granted First Quality’s motion as to laches and equitable estoppel and dismissed the noninfringement motion as moot.
SCA appealed, and on September 17, 2014, a panel of this court affirmed the district court’s opinion on laches, but reversed as to equitable estoppel. See SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC, 767 F.3d 1339 (Fed. Cir.2014) (“Panel Opinion”). On laches, the panel rejected SCA’s argument that the Supreme Court’s Petrella decision abolished laches in patent law, reasoning instead that the panel was bound by this court’s prior en banc opinion in A.C. Aukennan Co. v. R.L. Chaides Construction Co., 960 F.2d 1020 (Fed.Cir.1992) (en banc), and that Petrella left Aukerman intact. Panel Opinion at 1345. As to the delay element, the panel opinion held that while “SCA was not required to provide notice of the reexamination to First Quality,” “SCA remained silent for more than three years after the patent came out of reexamination.” Id. at 1346. “Given the circumstances, SCA should have been prepared to reassert its rights against First Quality shortly after the '646 patent emerged from reexamination.” Id. Therefore, the panel concluded that “SCA has failed to raise a genuine issue of material fact regarding the reasonability of its delay.” Id.
With respect to the prejudice element of laches, the panel affirmed the district court’s analysis. Specifically, the panel agreed that First Quality made a number of significant capital expenditures in its adult incontinence business, and that First Quality likely would have “restructured its activities to minimize infringement liability if SCA had brought suit earlier.” Id. at 1347. Because SCA did not present any contrary evidence, the panel held that “SCA has not identified any evidence that raises a genuine issue of material fact regarding First Quality’s presumed economic prejudice.” Id. at 1348. And although the district court did not explicitly weigh the equities in determining that laches applied, the panel concluded the error was harmless. Id. Thus, the panel affirmed the district court’s grant of summary judgment on laches.[1]
*1317 SCA subsequently filed a petition for rehearing en banc, asking this court to reconsider Aukerman in light of Petrella. On December 30, 2014, this court granted SCA’s petition and posed the following two en banc questions:
(a) In light of the Supreme Court’s decision in Petrella v. Metro-Goldwyn-Mayer, — U.S. -, 134 S.Ct. 1962, 188 L.Ed.2d 979 (2014) (and considering any relevant differences between copyright and patent law), should this court’s en banc decision in AC. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020 (Fed.Cir.1992), be overruled so that the defense of laches is not applicable to bar a claim for damages based on patent infringement occurring within the six-year damages limitations period established by 35 U.S.C. § 286?
(b) In light of the fact that there is no statute of limitations for claims of patent infringement and in view of Supreme Court precedent, should the defense of laches be available under some circumstances to bar an entire infringement suit for either damages or injunctive relief? See, e.g., Lane & Bodley Co. v. Locke, 150 U.S. 193, 14 S.Ct. 78, 37 L.Ed. 1049 (1893).
SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC, No. 2013-1564, 2014 WL 7460970, at *1 (Fed.Cir. Dec. 30, 2014) (granting en banc review). Following briefing, including numerous amicus briefs, .we held oral argument on June 19, 2015.
We have jurisdiction under 28 U.S.C. § 1295(a)(1).
II. Viability of Laches AfteR Petrella
A
SCA contends that, after the Supreme Court’s decision in Petrella, laches is no longer available as a defense to patent infringement within the six-year damages recovery period. We last addressed our laches law en banc in Aukerman. There, we set out five rules regarding the laches defense:
1. Laches is cognizable under 35 U.S.C. § 282 (1988) as an equitable defense to a claim for patent infringement.
2. Where the defense of laches is established, the patentee’s claim for damages prior to suit may be barred.
3. Two elements underlie the defense of laches: (a) the patentee’s delay in bringing suit was unreasonable and inexcusable, and (b) the alleged in-fringer suffered material prejudice attributable to the delay. The district court should consider these factors and all of the evidence and other circumstances to determine whether equity should intercede to bar pre-filing damages.
4. A presumption of laches arises where a patentee delays bringing suit for more than six years after the date the patentee knew or should have known of the alleged infringer’s activity.
5. A presumption has the effect of shifting the burden of going forward *1318 with evidence, not the burden of persuasion.
Aukerman, 960 F.2d at 1028.
Four different portions of Aukerman’s reasoning are especially relevant to this case. First, we determined in Aukemnan that laches was codified in 35 U.S.C. § 282. Aukemnan explained that, “[a]s a defense to a claim of patent infringement, laches was well established at the time of recodi-fication of the patent laws in 1952.” Id. at 1029. We also credited P.J. Federico’s Commentary on the New Patent Act for its observation that the second paragraph of § 282 includes “equitable defenses such as laches, estoppel and unclean hands.” Id. (quoting P.J. Federico, Commentary on the New Patent Act, 35 U.S.C.A. 1, 55 (West 1954) (hereinafter Federico Commentary )).
Second, Aukerman addressed the argument that laches conflicts with 35 U.S.C. § 286, which limits recovery of damages to the six years prior to the complaint. We explained that “[i]n other areas of our jurisdiction, laches is routinely applied within the prescribed statute of limitations period for bringing the claim.” Id. at 1030 (citing Cornetta v. United States, 851 F.2d 1372 (Fed.Cir.1988) (en banc) (military pay); Reconstruction Finance Corp. v. Harrisons & Crosfield Ltd., 204 F.2d 366 (2d Cir.), cert. denied, 346 U.S. 854, 74 S.Ct. 69, 98 L.Ed. 368 (1953) (breach of contract)). Moreover, we observed that § 286 (or a virtually identical analogue) “has been in the patent statute since 1897,” and that, “[wjithout exception, all circuits recognized laches as a defense to a charge of patent infringement despite the reenactment of the damages limitation in the 1952 statute.” Id. Aukerman also noted that “section 286 is not a statute of limitations in the sense of barring a suit for infringement.” Id. Rather, “the effect of section 286 is to limit recovery to damages for infringing acts committed within six years of the date of the filing of the infringement action.” Id. Finally, we reasoned that laches and a statute of limitations are not inherently incompatible. “By section 286, Congress imposed an arbitrary limitation on the period for which damages may be awarded on any claim for patent infringement. Laches, on the other hand, invokes the discretionary power of the district court to limit the defendant’s liability for infringement by reason of the equities between the particular parties.” Id. (emphasis in original).
Third, we rejected the argument “that laches, by reason of being an equitable defense, may be applied only to monetary awards resulting from an equitable accounting, not to legal claims for damages.” Aukerman, 960 F.2d at 1031. According to the Aukerman court, the merger of law and equity courts allowed laches to bar legal relief. When in 1915 Congress enacted 28 U.S.C. § 398 — which authorized parties to plead equitable defenses at law without having to file a separate bill in equity — “laches became available to bar legal relief, including patent damage actions.” Id. We also found persuasive the fact that Federal Rule of Civil Procedure 8(c) recognizes laches as a defense in civil actions. Id.
Fourth, Aukerman considered whether laches bars recovery of pre-filing damages only, or whether it precludes the entire suit. In ruling that laches prohibits recovery of pre-filing damages only, Aukerman relied on the Supreme Court’s Menendez decision. Aukerman quoted the following portion of Menendez:
Mere delay or acquiescence cannot defeat the remedy by injunction in support of the legal right, unless it has been continued so long[,] and under such eir-cumstances[,] as to defeat the right itself. ... Acquiescence[,] to avail[,] must *1319 be such as to create a new right in the defendant....
So far as the act complained of is completed, acquiescence may defeat the remedy on the principle applicable when action is taken on the strength of encouragement to do it[;] but so far as the act is in progress]],] and lies in .the future, the right to the intervention of equity is not generally lost by previous delay, in respect to which the elements of an estoppel could rarely arise.
Aukerman, 960 F.2d at 1040 (quoting Menendez, 128 U.S. at 523-24, 9 S.Ct. 143.) Aukerman was motivated by preserving the distinction between laches— which bars only pre-suit damages — and equitable estoppel — which bars the entire suit. Id. Estoppel, which does not necessarily involve delay in bringing suit, requires “statements or conduct of the pat-entee which must ‘communicate ... in a misleading way’ ... that the accused in-fringer will not be disturbed by the plaintiff patentee in the activities in which the former is currently engaged.” Id. at 1042. Aukerman explained that the “stated difference in the effect of laches and estoppel has served well to emphasize that more is required in the overall equities than simple laches if an alleged infringer seeks to wholly bar a patentee’s claim.” Id. at 1040. The court dismissed a rule by which laches could bar all relief “in egregious circumstances.” Id.
For over two decades, Aukerman governed the operation of laches in patent cases. However, last year in Petrella the Supreme Court held that laches was not a defense to legal relief in copyright law. Petrella calls portions of Aukerman’s reasoning into question, necessitating our present en banc reconsideration of laches.
Petrella involved an assertion that Metro-Goldwyn-Mayer’s (“MGM”) critically-acclaimed 1980 film Raging Bull infringed a copyright in a 1968 screenplay authored by Frank Petrella. Frank Petrella’s daughter, Paula Petrella (“Petrella”), renewed the copyright in 1991, but did not contact MGM until seven years later. Pe-trella, 134 S.Ct. at 1971. Over the next two years, Petrella and MGM exchanged letters concerning Petrella’s copyright claim. Id. Petrella then went silent, and did not file suit until January 6, 2009, about nine years after her last correspondence with MGM. Id. To dispose of the suit, MGM moved for summary judgment of laches, which the district court granted and the Ninth Circuit affirmed.
However, the Supreme Court reversed, holding that laches is no defense to a copyright infringement suit brought within the Copyright Act’s statutory limitations period. Fundamentally, the Supreme Court reasoned that “the copyright statute of limitations, § 507(b), itself takes account of delay,” crowding out the judiciary’s power to decide whether a suit is timely. Id. at 1973. According to the Court, “[ljaches ... originally served as a guide when no statute of limitations controlled the claim.” Id. at 1975. Historically, “laches is a defense developed by courts of equity; its principal application was, and remains, to claims of an equitable cast for which the Legislature has provided no fixed time limitation.” Id. at 1973. Laches is thus “gap-filling, not legislation-overriding.” Id. at 1974. In this respect, separation of powers concerns drove the result in Petrella. Petrella consequently held that “in face of a statute of limitations enacted by Congress, laches cannot be invoked to bar legal relief.” Id. Therefore, under Petrella, “[t]o the extent that an infringement suit seeks relief solely for conduct occurring within the limitations period ... courts are not at liberty to jettison Congress’ judgment on the timeliness of suit.” Id. at 1967.
*1320 In addition, the Petrella Court conceded that “there has been, since 1938, only one form of action — the civil action.” Petrella, 134 S.Ct. at 1974 (internal quotation marks omitted). But, the Court responded, “the substantive and remedial principles [applicable] prior to the advent of the federal rules [have] not changed.” Id. (alterations in original) (internal quotation marks omitted). “Both before and after the merger of law and equity in 1938, this Court has cautioned against invoking laches to bar legal relief.” Id. at 1973.
Petrella also addressed the extent to which laches should affect equitable relief. The Court explained: “In extraordinary circumstances, however, the consequences of a delay in commencing suit may be of sufficient magnitude to warrant, at the very outset of the litigation, curtailment of the relief equitably awardable.” Id. at 1977. Petrella then contrasted a Sixth Circuit case involving a copyrighted architectural design and the facts in Petrella. In the Sixth Circuit case, Chirco v. Crosswinds Communities, Inc., 474 F.3d 227 (6th Cir.2007), the plaintiffs “would not be entitled to an order mandating destruction of the housing project” embodying the copyrighted design because “the plaintiffs knew of the defendants’ construction plans before the defendants broke ground, yet failed to take readily available measures to stop the project; and the requested relief would work an unjust hardship upon the defendants and innocent third parties.” Petrella, 134 S.Ct. at 1978 (emphasis in original) (internal quotation marks omitted). In Petrella, however, “Petrella notified MGM of her copyright claims before MGM invested millions of dollars in creating a new edition of Raging Bull. And the equitable relief Petrella seeks — e.g., disgorgement of unjust gains and ah injunction against future infringement — would not result in total destruction of the film, or anything close to it.” Id. (emphasis in original) (internal quotation marks omitted). Furthermore, the Court reasoned that “[allowing Petrella’s suit to go forward will put at risk only a fraction of the income MGM has earned during that period and will work no unjust hardship on innocent third parties, such as consumers who have purchased copies of Raging Bull. The circumstances here may or may not (we need not decide) warrant limiting relief at the remedial stage, but they are not sufficiently extraordinary to justify threshold dismissal.” Id. (citation omitted).
Nonetheless, the Supreme Court continued: “Should Petrella ultimately prevail on the merits, the District Court, in determining appropriate injunctive relief and assessing profits, may take account of her delay in commencing suit.” Id. The Court then laid out several considerations for the district court. In particular, the “court should closely examine MGM’s alleged reliance on Petrella’s delay.” Id. “This examination should take account of MGM’s early knowledge of Petrella’s claims, the protection MGM might have achieved through pursuit of a declaratory judgment action, the extent to which MGM’s investment was protected by the separate-accrual rule, the court’s authority to order injunctive relief on such terms as it may deem reasonable, and any other considerations that would justify adjusting injunctive relief or profits.” Id. at 1978-79 (internal quotation marks and citation omitted). In conclusion, the Court assured that, “on the facts thus far presented,” Petrella would remain entitled to an ongoing royalty. Id. at 1979 (“Whatever adjustments may be in order in awarding injunctive relief, and in accounting for MGM’s gains and profits, on the facts thus far presented, there is no evident basis for immunizing MGM’s present and future uses of the copyrighted work, free from any obligation to pay royalties.”).
*1321 Finally, the Supreme Court in Petrella recognized that Congress could provide for a laches defense, noting, as an example, that it had done so in the Lanham Act, governing trademarks. Id. at 1974 n. 15. The Court took no position on whether its decision extends to the patent context, remarking that “based in part on § 282 and commentary fhereon, legislative history, and historical practice, the Federal Circuit has held that laches can bar damages incurred prior to the commencement of suit, but not injunctive relief. We have not had occasion to review the Federal Circuit’s position.” Id. (citation omitted).
Still, Petrella clearly casts doubt on several aspects of Aukerman. The following sections reexamine the availability of lach-es to bar recovery of damages incurred within the six-year limitations period.
B
First, we consider the character of 35 U.S.C. § 286. Section 286 states, in relevant part: “Except as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action.” 35 U.S.C. § 286. The parties and amici fervently debate whether § 286 is a statute of limitations or a damages limitation. By its terms, § 286 is a damages limitation. The statute does not preclude bringing a claim — instead, it limits a pat-entee’s damages recovery to compensation for only the last six years of infringement. See Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co., 754 F.2d 345, 347-48 (Fed.Cir.1985).
However, this distinction is irrelevant to the resolution of this case under Petrella. As discussed above at II.A, Petrella focuses on the fact that, in enacting a statute of limitations, Congress has spoken on the timeliness of copyright infringement damages claims. Thus, the question under Petrella is whether Congress has prescribed a time period for recovery of dam- . ages. Section 286 is one such prescription. In § 286, Congress provided a six-year time period for recovery of damages. Given that laches also considers the timeliness of damages claims, § 286 — a damages-barring time provision — invokes Petrella’s logic at least as much as, and perhaps more than, a statute of limitations. Petrella, 134 S.Ct. at 1973 (“[T]he copyright statute of limitations, § 507(b), itself takes account of delay.”). Moreover, because patent infringement is a continuous tort, there is no relevant functional difference between a damages limitation and a statute of limitations. We therefore see no substantive distinction material to the Petrella analysis between § 286 and the copyright statute of limitations considered in Petrella.
C
Next, we determine that Congress codified a laches defense in 35 U.S.C. § 282(b)(1). Section 282(b)[2] provides:
The following shall be defenses in any action involving the validity or infringement of a patent and shall be pleaded:
(1) Noninfringement, absence of liability for infringement or unenforceability.
(2) Invalidity of the patent or any claim in suit on any ground specified in part II as a condition for patentability.
*1322 (8) Invalidity of the patent or any claim in suit for failure to comply with—
(A) any requirement of section 112, except that the failure to disclose the best mode shall not be a basis on which any claim of a patent may be canceled or held invalid or otherwise unenforceable; or
(B) any requirement of section 251.
(4) Any other fact or act made a defense by this title.
By its plain terms, § 282 broadly sets out defenses available in a patent infringement or validity suit. Rather than enumerate specific defenses, subsection (1) lists categories of defenses — “[n]oninfringement, absence of liability for infringement or un-enforceability.” Subsections (2) and (3) follow this pattern, referring to invalidity based on “any ground specified in part II as a condition for patentability,” “any requirement of section 112,” and “any requirement of section 251.” And § 282(b) concludes with a catch-all provision in subsection (4): “[a]ny other fact or act made a defense by this title” is a defense within § 282(b).
The House and Senate Reports on § 282 confirm that Congress intended § 282 to have broad reach. Only one sentence in each Report describes § 282(b), but both endorse an expansive interpretation of the subsection. The Senate Report explains that “[t]he five defenses named in R.S. 4920 are omitted and replaced by a broader paragraph specifying defenses in general terms.” S.Rep. No. 82-1979 at 8-9 (1952), 1952 U.S.C.C.A.N. 2394, 2422. Likewise, the House Report clarifies that “[t]he defenses to a suit for infringement are stated in general terms, changing the language in the present statute, but not materially changing the substance.”[3] H.R.Rep. No. 82-1923, at 10 (1952).
Contemporary commentary by “P.J. Federico, a principal draftsman of the 1952 recodification,” Diamond v. Chakrabarty, 447 U.S. 303, 321, 100 S.Ct. 2204, 65 L.Ed.2d 144 (1980), reveals that the “broader” and “general” § 282 codified the laches defense. Federico’s Commentary on the New Patent Act, which appears as a prologue to Title 35 in West’s initial publication of the statute, states:
The defenses which may be raised in an action involving the validity or infringement of a patent are specified in general terms, by the second paragraph of section 282, in five numbered items. Item 1 specifies “Noninfringement, absence of liability for infringement, or unenforce-ability” (the last word was added by amendment in the Senate for greater clarity); this would include the defenses such as that the patented invention has not been made, used or sold by the defendant; license; and equitable defenses such as laches, estoppel and unclean hands.”
Federico Commentary (emphases added).
The dissent criticizes our reliance on Federico, Dissent at 1337-38, but the Supreme Court has trusted Federico as an authority on the Patent Act at least thrice. See Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 28, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997) (citing 2 D. Chisum, Patents § 8.04[2], pp. 63-64 (1996) (discussing Federico Commentary)); Diamond, 447 U.S. at 321, 100 S.Ct. 2204 (citing Hearings on H.R. 3760 before Subcommittee No. 3 of the House *1323 Committee on the Judiciary, 82d Cong., 1st Sess., 37 (1951) (statement of P.J. Federico)); Aro Mfg. Co. v. Convertible Top Replacement Co., 365 U.S. 336, 342 n. 8, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961) (citing Federico Commentary). Moreover, we and our predecessors have relied on the Federico Commentary countless times as “an invaluable insight into the intentions of the drafters of the Act.” Symbol Techs., Inc. v. Lemelson Med., 277 F.3d 1361, 1366 (Fed.Cir.2002); see, e.g., Antares Pharma, Inc. v. Medac Pharma Inc., 771 F.3d 1354, 1360 (Fed.Cir.2014); Slip Track Sys., Inc. v. Metal-Lite, Inc., 304 F.3d 1256, 1264 n. 2 (Fed.Cir.2002); BIC Leisure Prods., Inc. v. Windsurfing Int’l, Inc., 1 F.3d 1214, 1220 (Fed.Cir.1993); Albert v. Kevex Corp., 729 F.2d 757, 761 (Fed.Cir.1984); Application of Hogan, 559 F.2d 595, 603 (C.C.P.A.1977); Application of Harry, 51 C.C.P.A. 1541, 333 F.2d 920, 924 n. 2 (1964). In addition, Judge Rich, who was deeply involved in crafting the Patent Act, described Federico in a concurring opinion as “[t]he key person” in drafting the Patent Act. Paulik v. Rizkalla, 760 F.2d 1270, 1277 (Fed.Cir.1985) (Rich, J., concurring). According to,Judge Rich, Federico “not only wrote the first draft of the Act himself and actively participated for the next two years in every detail of its revisions but, having been made a special consultant to the House subcommittee in charge of the project, he was also a principal author of House Report No. 1923 on the bill, which was virtually copied by the Senate Judiciary Committee as its report No. 1979, and the author of the section-by-section Revisors Notes.” Id. Judge Rich also reveals that the Federico Commentary was solicited by the West Publishing Company for publication with the new Title 35:
After enactment of the law, West Publishing Company asked Federico to write a commentary on it for publication in U.S.C.A., which he did, and it was published in 1954 in the first of the volumes containing the new Title 35. Federico also submitted drafts of the commentary to Ashton and the Drafting Committee for suggestions....
Id. (footnote omitted). We therefore consider the Federico Commentary to be a sufficiently reliable source on the meaning of § 282.
To summarize, § 282 uses inclusive language, the legislative history characterizes § 282 as “broader” and “general,” and the Federico Commentary explicitly states that § 282 includes laches. The dissent does not point to anything that contradicts our understanding of § 282. Accordingly, we conclude that Congress codified a lach-es defense in § 282.
Notably, our construction of § 282 to include laches is neither novel, nor a direct response to Petrella. Rather, for decades we have held that laches was codified in § 282, including once sitting en banc in Aukerman. See Aukerman, 960 F.2d at 1029; Symbol, 277 F.3d at 1366; Mylan Pharm., Inc. v. Thompson, 268 F.3d 1323, 1331 (Fed.Cir.2001); J.P. Stevens & Co. v. Lex Tex Ltd., 747 F.2d 1553, 1561 (Fed.Cir.1984). Nothing in Petrella casts doubt on our longstanding construction of the Patent Act.
D
Having determined that Congress codified a laches defense in § 282, we now reach the critical question: does laches as codified in the 1952 Patent Act bar recovery of legal relief? If laches as codified in § 282 is a defense against only equitable relief, Petrella prohibits judicial application of laches to bar legal damages. If, however, laches as codified'operates as a defense to both legal and equitable relief, patent law’s statutory scheme — like the *1324 Lanham Act, see Petrella, 134 S.Ct. at 1974 n. 15 — does not implicate Petrella. In that case, § 282 obligates us to apply laches as a defense to legal relief, notwithstanding § 286’s time limitation on the recovery of damages.
Turning to the content of the laches defense in § 282, the text of § 282 provides little guidance. Because § 282 does not enumerate specific defenses, the statutory text says nothing on the applicability of laches to legal relief. Similarly, the legislative history is silent on the meaning of laches, and Federico does no more than mention laches’ codification in § 282.
In these circumstances, the Supreme Court counsels that “[w]hen a statute covers an issue previously governed by the common law, we must presume that Congress intended to retain the substance of the common law.” Kirtsaeng v. John Wiley & Sons, Inc., — U.S. -, 133 S.Ct. 1351, 1363, 185 L.Ed.2d 392 (2013) (internal quotation marks omitted).[4] This presumption applies where “Congress has failed expressly or impliedly to evince any intention on the issue.” Astoria Fed. Sav. & Loan Ass’n v. Solimino, 501 U.S. 104, 110, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991); see also Isbrandtsen Co. v. Johnson, 343 U.S. 779, 783, 72 S.Ct. 1011, 96 L.Ed. 1294 (1952) (“Statutes which invade the common law ... are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident.”). “In order to abrogate a common-law principle, the statute must speak directly to the question addressed by the common law.” United States v. Texas, 507 U.S. 529, 534, 113 S.Ct. 1631, 123 L.Ed.2d 245 (1993) (internal quotation marks omitted).
This canon of construction is especially applicable here. Congress’s purpose in enacting the Patent Act was to codify the prevailing law wholesale, except where changes were expressly noted. The House' Report reveals that, while a preliminary draft of the Patent Act “included a collection of a large number of proposed changes in the law,” “[a]s a result of the comments received, it was decided not to include most of the proposed changes in a bill but to defer them for later consideration, and to limit the bill to the main purpose of codification and enactment of title 35 into law, with only some minor procedural and other changes deemed substantially noncontroversial and desirable.” H.R.Rep. No. 82-1923, at 3. Consequently, “the principal purpose of the bill [was] the codification of title 35.... ” Id. at 5; S.Rep. No. 82-1979 at 4, 1952 U.S.C.C.A.N. at 2397. While “there *1325 [were] a number of changes in substantive statutory law,” “these [were] explained in some detail in the revision notes,” and “[t]he major changes or innovations in the title consist of incorporating a requirement for invention in § 103 and the judicial doctrine of contributory infringement in § 271.” H.R.Rep. No. 82-1923, at 5; S.Rep. No. 82-1979 at 4, 1952 U.S.C.C.A.N. at 2397. No changes to lach-es doctrine were mentioned in the revision notes. Finally, “just before the bill was passed in the Senate, Senator Salton-stall asked on the floor, ‘Does the bill change the law in any way or only codify the present patent laws?’ Senator McCarran, Chairman of the Judiciary Committee which had been in charge of the bill for the Senate, replied, ‘It codifies the present patent laws.’ ” Aro Mfg. Co. v. Convertible Top Replacement Co., 365 U.S. 336, 350 n. 2, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961) (Black, J., concurring) (quoting 98 Cong. Rec. 9323 (July 4, 1952)); see also Dawson Chem. Co. v. Rohm & Haas Co., 448 U.S. 176, 203, 100 S.Ct. 2601, 65 L.Ed.2d 696 (1980) (quoting the same). Therefore, if anything, Congress intended to adopt the laches patent common law when it included laches in § 282.
As outlined above, Congress remained silent on the content of the laches defense.[5] Section 282 therefore retains the substance of the common law as it existed at the time Congress enacted the Patent Act. See Astoria, 501 U.S. at 109, 111 S.Ct. 2166 (“[L]egislative repeals by implication will not be recognized.... ”). See generally Symbol, 277 F.3d at 1366 (“There is nothing in the legislative history to suggest that Congress did not intend to carry forward the defense of prosecution lach-es.... ”); Transco Prods. Inc. v. Performance Contracting, Inc., 38 F.3d 551, 557 (Fed.Cir.1994) (“The legislative history of section 120 does not indicate any congressional intent to alter the Supreme Court’s interpretation of continuing application practice.”). Accordingly, we must review the case law prior to 1952 to determine whether courts applied laches to bar legal relief.
Some initial background information is necessary to place the case law in context. Traditionally, patentees could seek an injunction and an accounting of profits— both equitable remedies — by filing a bill in equity courts. Alternatively, patentees could seek compensatory damages by filing an action at law. In 1870, however, Congress gave equity courts the authority to award legal damages in patent cases. Patent Act of 1870, ch. 230, § 55, 16 Stat. 198, 206 (1870). Forty-five years later, in 1915, Congress passed a general statute (§ 274b) providing that “in all actions at law equitable defenses may be interposed by answer, plea, or replication without the necessity of filing a bill on the equity side of the court.” Act of March 3, 1915, ch. 90, § 274b, 38 Stat. 956 (1915). Prior to this statute, parties wishing to raise equitable defenses in an action at law had to file a separate bill in equity seeking to enjoin the legal action. See, e.g., Kessler v. Eldred, 206 U.S. 285, 27 S.Ct. 611, 51 L.Ed. 1065 (1907). Section 274b did not change substantive law. See Enelow v. N.Y. Life Ins. Co., 293 U.S. 379, 382, 55 S.Ct. 310, 79 L.Ed. 440 (1935), overruled on other grounds by Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988). Rather, “[t]he net effect of [§§ 274a and 274b] was to allow transfer of action begun on either side of the court to the other side, without the necessity of commencing a new action, to permit determination of *1326 law questions arising in equity actions in those actions, and to allow equitable defenses to be offered and equitable relief to be granted in an action at law.” City of Morgantown v. Royal Ins. Co., 337 U.S. 254, 256-57, 69 S.Ct. 1067, 93 L.Ed. 1347 (1949). Beginning in 1915, then, accused infringers were not procedurally foreclosed from pleading a laches defense in an action at law.
The merger of law and equity was completed with the advent of the Federal Rules of Civil Procedure in 1938. “[T]here has been, since 1938, only ‘one form of action — the civil action.’ ”[6] Petrella, 134 S.Ct. at 1974 (quoting Fed.R.Civ.P. 2). Prior to 1938, where the requirements for equitable jurisdiction were satisfied, paten-tees often alleged patent infringement in a bill in equity, as equitable courts could provide the powerful remedies of an accounting of profits and an injunction, which were unavailable in actions at law, in addition to compensatory damages. After the Federal Rules of Civil Procedure were implemented, patentees no longer needed to choose.
Finally, in the Patent Act of 1946, Congress eliminated accounting of profits as a remedy for patent infringement (except for design patents). See Act of Aug. 1, 1946, Pub.L. No. 79-587, 60 Stat. 778; see also Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc., 761 F.2d 649, 654 (Fed.Cir.1985) (“The 1946 amendment to the damages provisions effectively eliminated this double recovery.”). “After the 1946 amendment ... R.S. 4921 provided that ‘the complainant shall be entitled to recover general damages which shall be due compensation for making, using, or selling the invention, not less than a reasonable royalty therefor....’” Kori, 761 F.2d at 654 (quoting Act of Aug. 1, 1946, Pub.L. No. 79-587, 60 Stat. 778). The prior availability of an equitable accounting of profits in patent infringement cases is relevant because, in cases litigated between 1870 and 1946, the patentee often sought both compensatory damages and an accounting of profits. Id. Moreover, “[Hollowing the 1870 Patent Act, courts regularly used the terms ‘account’ and ‘accounting’ to refer to the special master’s determination of both an adjudged infringer’s profits and a pat-entee’s damages.” Robert Bosch, LLC v. Pylon Mfg. Corp., 719 F.3d 1305, 1310 (Fed.Cir.2013). For this reason, it is in many cases difficult to determine whether a court applied laches to bar purely equitable relief, or whether, in using the term “accounting,” a court also prohibited legal relief. That said, equity courts’ grouping of legal and equitable relief under a single name — accounting—could explain a unique willingness in patent law to apply laches to bar a traditionally legal remedy.
With all of the foregoing in mind, we now turn to the pre-1952 case law on laches. Upon review, the case law demonstrates that, by 1952, courts consistently applied laches to preclude recovery of legal damages. Nearly every circuit recognized that laches could be a defense to legal relief prior to 1952. See, e.g., Banker v. Ford Motor Co., 69 F.2d 665 (3d Cir.1934); Hartford-Empire Co. v. Swindell Bros., 96 F.2d 227 (4th Cir.1938); Ford v. Huff, 296 F. 652 (5th Cir.1924); France Mfg. Co. v. Jefferson Elec. Co., 106 F.2d 605 (6th Cir.1939); Brennan v. Hawley Prods. Co., 182 F.2d 945 (7th Cir.1950); Middleton v. Wiley, 195 F.2d 844 (8th Cir.1952).[7] In fact, *1327 the only two pre-1952 circuit courts that considered SCA’s argument — that laches operates as a defense to equitable relief only — expressly held that laches can also bar legal remedies. See Ford, 296 F. at 658; Banker, 69 F.2d at 666.
The Ford case was both early and influential. In Ford, the patentee, Huff, was employed by defendant Henry Ford as an electrical and mechanical engineer. Ford, 296 F. at 654. Huff and Ford agreed that Huff would invent a magneto for an automobile flywheel and assign the patent rights to Ford, and Ford would pay a reasonable royalty for the invention’s use. Id. Huff subsequently invented the magneto and assigned the patent rights to Ford. Id. While Ford paid Huff $10,000 in installments upon Ford manufacturing the first 20,000 magnetos, Ford made no further royalty payments. Id.
Huff did not bring suit against Ford until fourteen years after the invention, ten years after he left the Ford Motor Company, and eight years after the patents issued. Id. at 655. The court found that Ford had established both laches and equitable estoppel — laches from the delay, and equitable estoppel from Huffs acceptance of Ford’s $10,000 payment. Id. at 657. The court then considered whether the laches and equitable estoppel defenses could be brought in a suit at law. Citing § 274b and Liberty Oil Co. v. Condon National Bank, 260 U.S. 235, 43 S.Ct. 118, 67 L.Ed. 232 (1922), the Fifth Circuit stated that “a defendant in an action at law who files a plea setting up an equitable defense is given the same rights as if he had set them up in a bill in equity.” Id. at 658. The court reasoned that “a bill in equity disclosing the state of facts alleged in the plea in question would show that defendant was entitled to prevent the enforcement of the claim asserted by this suit on the ground that plaintiffs conduct had been such as to deprive him of the right to enforce that claim.” Id. Therefore, because the laches and equitable estoppel defenses could be pleaded in a bill in equity to enjoin the patentee’s suit at law for patent infringement, § 274b allowed the defenses to be pleaded directly in the legal suit.[8]
The only other case to expressly consider the argument that laches cannot preclude legal relief is Banker. In Banker, which involved only laches and not equitable estoppel, the Third Circuit employed similar methodology to Ford. Specifically, Banker held that “[h]ad the appellant’s suit been in equity, the evidence would have been ample for holding that recovery was barred because of laches.” Banker, 69 F.2d at 666. Nevertheless, “[t]he appellant admitted] the authority of the cited cases if applied in equity, but contended] that they [were] inapplicable to actions at law.” Id. The court quickly dispensed with that contention, however. Relying on Ford, Banker concluded that § 274b “authorizes equitable defenses in actions at law theretofore applicable only in equity.” Id.
A plethora of other cases assumes laches to preclude legal relief without discussion. *1328 See, e.g., Hartford-Empire Co. v. Swindell Bros., 96 F.2d 227 (4th Cir.1938); France Mfg. Co. v. Jefferson Elec. Co., 106 F.2d 605 (6th Cir.1939); Brennan v. Hawley Prods. Co., 182 F.2d 945 (7th Cir.1950); Universal Coin Lock Co. v. Am. Sanitary Lock Co., 104 F.2d 781 (7th Cir.1939); George J. Meyer Mfg. Co. v. Miller Mfg. Co., 24 F.2d 505 (7th Cir.1928); Wolf, Sayer & Heller v. U.S. Slicing Mach. Co., 261 F. 195 (7th Cir.1919); Middleton v. Wiley, 195 F.2d 844 (8th Cir.1952).[9] In addition, the Supreme Court in Lane & Bodley Co. v. Locke mentions monetary compensation, but does not state whether the recovery was legal or equitable in nature. 150 U.S. 193, 194, 14 S.Ct. 78, 37 L.Ed. 1049 (1893) (“[T]he circuit court found in favor of the complainant, and, after reference to and report by a master, rendered a final decree against the defendant for the sum of $3,667.37, with interest and costs.”). Countless other cases refer to an accounting, and thus remain ambiguous as to whether they barred legal relief. See, e.g., Union Shipbuilding Co. v. Bos. Iron & Metal Co., 93 F.2d 781 (4th Cir.1938); Gillons v. Shell Co. of Cal., 86 F.2d 600 (9th Cir.1936); Window Glass Mach. Co. v. Pittsburgh Plate Glass Co., 284 F. 645, 647 (3d Cir.1922); A.R. Mosler & Co. v. Lurie, 209 F. 364 (2d Cir.1913). Significantly, neither SCA, nor the amici, nor the dissent, can identify a single appellate-level patent infringement case stating — much less holding — that laches is inapplicable to legal damages.
Finally, the Walker patent treatise supports the conclusion that laches can preclude legal remedies. The 1937 version of the Walker treatise was published before many of the cases discussed above. 4 Walker, on Patents (Deller’s ed.1937). Nonetheless, although it does not list lach-es among the defenses in actions at law, see id. §§ 656, 687-88, Walker elsewhere explains that “[w]here a plaintiff is chargeable with laches, he cannot recover the damages he has suffered nor the profits defendant has gained.” Id. § 880B (citing George Meyer, 24 F.2d 505). Moreover, Walker’s 1951 Supplement states that “[l]aches and estoppel are equitable defenses, and may be interposed in an action at law.” 4 Walker, on Patents at 106 (Supp.1951) (addressing § 575) "(citing Mather v. Ford Motor Co., 40 F.Supp. 589 (E.D.Mich.1941)).
In sum, the case law strongly supports the availability of laches to bar legal relief. Section 282 codified whatever laches doctrine existed when Congress enacted the Patent Act in 1952. Although the development occurred over time, by 1952 nearly every circuit had approved of the proposition that laches could bar legal relief for patent infringement, and no court had held to the contrary. The Walker treatise — in 1937 and then more authoritatively in 1951 — agreed that laches precludes recovery of legal damages. The laches doctrine codified in § 282 must have meaning, and, absent any direction from Congress, it takes on its common law meaning. Following a review of the relevant common law, that meaning is clear: in 1952, laches operated as a defense to legal relief. Therefore, in § 282, Congress codified a laches defense that barred recovery of legal remedies.
*1329 The dissent suggests that this significant court of appeals authority allowing a lach-es defense to patent damages actions should not be deemed incorporated into the 1952 Act because “[a]ny analysis of what the common law was at a certain point in time must start with Supreme Court precedent” which established a “general principle” that laches does not bar a claim for legal relief. Dissent at 1387, 1339. The dissent also suggests that circuit authority allowing the laches defense in equity actions is not pertinent to congressional intent. Id. at 1339. The dissent is incorrect on both counts. In contrast to other areas, in patent law before 1952 there was no sharp distinction between legal and equitable actions for damages or in the defenses that were available. See supra pp. 1324-25. Patent damages actions were unlike typical damages actions in that the 1870 statute allowed the recovery of damages in either an action at law or in equity, see 16 Stat. 206 (1870), and the 1897 statute of limitations applied to both legal and equitable actions, see 29 Stat. 694 (1897), as did the laches defense. Furthermore, the Chairman of the Judiciary Committee clarified on the Senate floor just before the Patent Act was passed that the 1952 Act “codifie[d] the present patent laws.’ ” 98 Cong. Rec. 9323 (emphasis added); see also supra pp. 1322-23. If Congress looked to the common law, it likely looked to the common law of patents[10] rather than to more general principles.
E
The fact that § 286 speaks to the timeliness of damages claims does not alter the outcome. Petrella fundamentally concerns separation of powers. That is, Petrella eliminates copyright’s judicially-created laches defense because Congress, through a statute of limitations, has already spoken on the timeliness of copyright infringement claims, so there is no room for a judicially-created timeliness doctrine. See Petrella, 134 S.Ct. at 1974 (describing laches as “gap-filling, not legislation-overriding”). The statutory scheme in patent law, however, is different. While Congress has spoken on the timeliness of patent damages claims, Congress also codified a lach-es defense in § 282. Thus, because § 286 provides for a time limitation on the recovery of legal remedies, and § 282 provides for laches as a defense to legal relief, the separation of powers concern is not present. See id. at 1974 n. 15 (noting that laches is preserved in trademark law because the Lanham Act “expressly provides for defensive use of ‘equitable principles, including laches’ ”). Laches therefore remains a viable defense to legal relief in patent law.
Despite whatever tension may exist between the § 286 damages limitation and the § 282 laches defense, “we have no *1330 authority to substitute our views for those expressed by Congress in a duly enacted statute.” Mobil Oil Corp. v. Higginbotham, 436 U.S. 618, 626, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978). If, in light of this issue’s newfound salience, Congress decides that the § 286 damages limitation and the § 282 laches defense are incompa-n tibie, it can change the law. As a court, however, we must apply the law as enacted, which means that the § 286 damages limitation and the § 282 laches defense must continue to coexist.
F
Finally, one major difference between copyright and patent law bears mention: copyright infringement requires evidence of copying, but innocence is no defense to patent infringement. Compare N. Coast Indus. v. Jason Maxwell, Inc., 972 F.2d 1031, 1033 (9th Cir.1992) (“If the plaintiff copyright holder survives the first step, i.e., it establishes that it owns a valid copyright, then the plaintiff must establish infringement by showing both access to its copyrighted material on the part of the alleged infringer and substantial similarity between the copyrighted work and the alleged infringing work.”), and Eden Toys, Inc. v. Marshall Field & Co., 675 F.2d 498, 501 (2d Cir.1982) (“Evidence of independent creation may be introduced by p, defendant to rebut a plaintiffs prima facie case of infringement.”), with Commil USA, LLC v. Cisco Sys., Inc., — U.S. -, 135 S.Ct. 1920, 1926, 191 L.Ed.2d 883 (2015) (“Direct infringement is a strict-liability offense.”). Because copyright infringement requires proof of access, a potential defendant is typically aware of a risk that it is infringing and can estimate its exposure when making its initial investment decision. See Dell Br. 26-27; Roche Br. 19-21. The potential defendant can also accumulate evidence of independent creation to protect its investment. Thus, in Petrella — as in a typical copyright suit— “[allowing Petrella’s suit to go forward will put at risk only a fraction of the income MGM has earned during that period and will work no unjust hardship on innocent third parties.... ” Petrella, 134 S.Ct. at 1978.
In patent law, however, the calculus is different. For example, in the medical device industry, a company may independently develop an invention and spend enormous sums of money to usher the resultant product through regulatory approval and marketing, only to have a pat-entee emerge six years later to seek the most profitable six years of revenues. See Roche Br. 19-23; IPO Br. 19. In the high tech industry, amici advise that businesses receive demand letters every day — many of which assert unmeritorious claims — and it is often impractical for companies to determine which claims have merit. See Dell Br. 23-27. Independent invention is no defense in patent law, so without laches, innovators have no safeguard against tardy claims demanding a portion of their commercial success. Consequently, “there is a recurring risk that a stale patent claim will inflict significant hardship on a defendant who has lost the meaningful ability to choose between alternative technologies and whose investment in research, development, and further innovation may be jeopardized.” Dell Br. 27. This risk likely explains why the amici in this case — encompassing industries as diverse as biotechnology, electronics, manufacturing, pharmaceuticals, software, agriculture, apparel, health care, telecommunications, and finance — overwhelmingly support retaining laches in patent law.[11]
*1331 III. LaCHe's’ Application to Ongoing Relief
The second question for en banc . review concerns the extent to which laches can limit recovery of ongoing relief. Aukerman held that laches could not bar prospective relief. Aukerman, 960 F.2d at 1041. Reexamination of that rule is necessary in light of Petrella and the Supreme Court’s decision in eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006). There are two parts to this inquiry: whether laches can bar permanent injunctive relief and whether it can bar an ongoing royalty for continuing infringing acts.
When a court orders ongoing relief, the court acts within its equitable discretion. See eBay, 547 U.S. at 391-92, 126 S.Ct. 1837; Paice LLC v. Toyota Motor Corp., 504 F.3d 1293, 1316 (Fed.Cir.2007). As eBay instructs, equitable “discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards.” eBay, 547 U.S. at 394, 126 S.Ct. 1837. With respect to injunctions, this means following eBay’s familiar four-factor test:
A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.
Id. at 391, 126 S.Ct. 1837.
Consideration of laches fits naturally into this framework. As noted in Petrella, “the District Court, in determining appropriate injunctive relief ... may take account of [the plaintiffs] delay in commencing suit.” Petrella, 134 S.Ct. at 1978; see also Menendez, 128 U.S. at 523, 9 S.Ct. 143 (“Mere delay or acquiescence cannot defeat the remedy by injunction in support of the legal right, unless it has been continued so long, and under such circumstances, as to defeat the right itself.”). Many of the facts relevant to laches, such as the accused infringer's reliance on the patentee’s delay, fall under the balance of the hardships factor. Id. Unreasonable delay in bringing suit may also be relevant to a patentee’s claim that continued infringement will cause it irreparable injury. More than anything, district courts should consider all material facts, including those giving rise to laches, in exercising its discretion under eBay to grant or deny an injunction. See eBay, 547 U.S. at 394, 126 S.Ct. 1837.
The Aukerman court, relying bn Menen-dez, based its conclusion that laches may only bar pre-suit damages on the necessity of maintaining a distinction between laches and equitable estoppel. Aukerman, 960 F.2d at 1040-41. But Menendez does not create a bright-line rule favoring injunctions. In fact, Menendez repeatedly allows for the possibility that laches could *1332 foreclose injunctive relief. For example, an injunction may be inequitable when the delay “has been continued so long, and under such circumstances, as to defeat the right itself.” Menendez, 128 U.S. at 523, 9 S.Ct. 143; see also id. at 524, 9 S.Ct. 143 (“[S]o far as the act is in progress, and lies in the future, the right to the intervention of equity is not generally lost by previous delay, in respect to which the elements of an estoppel could rarely arise.”) (emphasis added); id. at 524-25, 9 S.Ct. 143 (“Delay in bringing suit there was, and such delay as to preclude recovery of damages for prior infringement; but there was neither conduct nor negligence which could be held to destroy the right to prevention of further injury”) (emphasis added).[12] Likewise, eBay clarifies that a patentee is not automatically entitled to an injunction — the patentee must prove that the equities favor an injunction. eBay, 547 U.S. at 392, 126 S.Ct. 1837 (“[Ijnjunctive relief may issue only in accordance with the principles of equity.”) (internal quotation marks omitted). Laches, an equitable defense, belongs in that calculus. We, accordingly, reject Aukerman’s bright line rule regarding the interplay between lach-es and injunctive relief.
With respect to ongoing royalties, while the principles of equity apply, equity normally dictates that courts award ongoing royalties, despite laches. Menendez, an influential case contrasting laches and equitable estoppel in the trademark context, guides us here. According to Menendez, delay in exercising a patent right, without more, does not mean that the patentee has abandoned its right to its invention. Rather, the patentee has abandoned its right to collect damages during the delay. Equitable estoppel, on the other hand, is different — the patentee has granted a license to use the invention that extends throughout the life of the patent:
Acquiescence, to avail, must be such as to create a new right in the defendant. ... But there is nothing here in the nature of an estoppel; nothing which renders it inequitable to arrest at this stage any further invasion of complainants’ rights. There is no pretense of abandonment. That would require proof of non-user by the owner, or general surrender of the use to the public.... Delay in bringing suit there was, and such delay as to preclude recovery of damages for prior infringement; but there was neither conduct nor negligence which could be held to destroy the right to prevention of further injury.
Menendez, 128 U.S. at 524-25, 9 S.Ct. 143.
Petrella also briefly considered the propriety of ongoing royalties. Although Petrella did not supply its reasoning, it found that, “on the facts thus far presented, there [was] no evident basis for immunizing MGM’s present and future uses of the copyrighted work, free from any obligation to pay royalties.” Petrella, 134 S.Ct. at 1979. As did Aukennan, moreover, Menendez and Petrella caution against erasing the distinction between laches and estoppel. As Petrella stated, “the doctrine of estoppel may bar the copyright owner’s claims completely, eliminating all potential remedies. The test for estoppel is more exacting than the test for laches, and the two defenses are differently oriented. The gravamen of estoppel ... is misleading and consequent loss. Delay may be involved, but is not an element of the defense. For laches, timeliness is the essential element.” Petrella, 134 S.Ct. at 1977 (citations omitted). For that reason, absent egregious circumstances, when in- *1333 junetive relief is inappropriate, the paten-tee remains entitled to an ongoing royalty.
In sum, we must recognize “the distinction between ... estoppel and laches....” Id. (first alteration in original). Whereas estoppel bars the entire suit, laches does not. As outlined above, laches in combination with the eBay factors may in some circumstances counsel against an injunction. However, a patentee guilty of laches typically does not surrender its right to an ongoing royalty. Menendez, 128 U.S. at 523-25, 9 S.Ct. 143. Paramount in both these inquiries are the flexible rules of equity and, as a corollary, district court discretion. “[A] major departure from the long tradition of equity practice should not be lightly implied.” eBay, 547 U.S. at 391, 126 S.Ct. 1837 (quoting Weinberger v. Romero-Barcelo, 456 U.S. 305, 320, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982)).
V. CoNClusion
For the foregoing reasons, laches remains a defense to legal relief in a patent infringement suit after Petrella. Laches bars legal relief, and courts must weigh the facts underlying laches in the eBay framework when considering an injunction. However, absent extraordinary circumstances, laches does not preclude an ongoing royalty.
Finally, we reinstate the panel opinion’s reversal of the district court’s grant of summary judgment on equitable estoppel and adopt its reasoning. We thus remand to the district court for proceedings consistent with this opinion.
REVERSED AND REMANDED

. On equitable estoppel, the panel reversed the district court's grant of summary judg *1317 ment because competing inferences could be drawn as to the meaning of SCA’s silence regarding the '646 patent. Panel Opinion at 1350. The panel also held that a dispute of material fact remained over ■ whether First Quality relied on SCA’s alleged misleading communication because First Quality could have relied on its own belief that the '646 patent was invalid or simply ignored the '646 patent. Id. at 1350-51.

. This version of § 282(b) incorporates amendments by the America Invents Act that, due to later effective dates, are inapplicable to the instant case. See Pub.L. 112-29, § 15(a), (c), 125 Stat. 284, 328; § 20(g), (j)(l), (Z), 125 Stat. 284, 334-35 (2011). Those amendments, however, would not affect our decision today. For convenience, therefore, we use the current version of the statute.

. The dissent asserts that the words "not materially changing the substance” indicate that § 282 is no broader than R.S. 4920. Dissent at 1336. But by the statutes' plain terms that contention is wrong. R.S. 4920 enumerated five specific defenses. Even putting aside § 282(b)(1) and the catch-all provision in § 282(b)(4), § 282(b)(2) and (b)(3) clearly broaden the statutory defenses available to accused infringers.

. While the doctrine of laches in the patent context is not strictly a matter of common law, as the patent law is statutory, the Supreme Court has treated uniform interpretations of statutes involving judicially created doctrines' as invoking common law adoption principles. In United States v. Texas, 507 U.S. 529, 533, 113 S.Ct. 1631, 123 L.Ed.2d 245 (1993), the Supreme Court considered whether the statutory scheme there implicitly allowed for the federal government to recover prejudgment interest for money owed by state governments. The statute itself was silent on the issue, only expressly requiring individuals to pay prejudgment interest. The Court de- . termined that there was a common law tradition of the federal government being able to recover prejudgment interest for money owed it by the states, and therefore that the statute implicitly allowed for the federal government to recover prejudgment interest against the states. Indeed, the Court rejected an argument that the presumption favoring the common law only applies "with respect to state common law or federal maritime law." Id. at 534, 113 S.Ct. 1631. See also Singer, Norman & Singer, J.D., 2B Statutes and Statutory Construction § 50:1 (7th ed. 2007) ("All legislation is interpreted in light of the common law and the scheme of jurisprudence existing at the time of its enactment.”).

. If we can infer anything from what Congress said, it is that Congress intended to "not materially chang[e] the substance” of the § 282 defenses. H.R.Rep. No. 821923, at 10.

. The christening of the Federal Rules of Civil Procedure did not alter any substantive law. Petrella, 134 S.Ct. at 1974.

. Significantly, the cases cited as examples here do not include the numerous cases that apply laches to bar an "accounting.” Because of the term's inherent ambiguity (de *1327 scribed above in text), we do not rely on such cases.

. Subsequently, the Supreme Court in Ene-low — which held that § 274b changed no substantive law — cited Ford in the context of an injunction staying a legal action pending resolution of an equitable defense. Enelow, 293 U.S. at 383, 55 S.Ct. 310. Although unclear, Enelow arguably approved of Ford’s § 274b methodology. Id. (explaining that, under § 274b, "the court, exercising- what is essentially an equitable jurisdiction, in effect grants or refuses an injunction restraining proceedings at law precisely as if the court had acted upon a bill of complaint in a separate suit for the same purpose”).

. SCA and some amici contend that the Middleton case holds that laches cannot preclude legal relief. But Middleton merely states that the elements of laches were not proven in that case. As Middleton reasoned, delay, without prejudice, is insufficient. Middleton, 195 F.2d at 847. Moreover, the Middleton court ruled that application of laches would have been inequitable because the accused infring-ers “knowingly and deliberately were using for their own benefit the owner’s patented equipment without authority, legal excuse or payment of royalty.” Id.

. The two patent cases cited by the dissent— both trial court cases from a single jurisdiction — are unhelpful. In the first, City of Concord v. Norton, 16 F. 477 (C.C.D.Mass.1883), after noting that the equitable defense of es-toppel was available at law and at equity, the court found that equitable estoppel was not established. Id. at 479. The court then stated that if laches had been alleged, it would not have been available because "for laches the remedy at law is found in the statute of limitations.” Id. at 480. It is difficult to know what was meant by this dictum because at this time no statute of limitations existed in patent law. The second, Thorpe v. Wm. Filene’s Sons Co., 40 F.2d 269, 270 (D.Mass.1930), simply did not address whether patent law was different from other areas. Moreover, because a plethora of court of appeals-level case law concludes that laches may bar legal relief, we need not list the many district court cases, such as Mather, 40 F.Supp. at 591-92, that accord with our reasoning.

. See, e.g., Brief of Amicus Curiae Roche Molecular Systems, Inc. in Support of Defen *1331 dants-Appellees; Brief of Dell Inc. et al. as Amicus Curiae in Support of Defendants-Ap-pellees; Brief of Intellectual Property Owners Ass’n as Amicus Curiae in Support of Defendants-Appellees; Corrected Brief of Amici Curiae Briggs & Stanton Corp., Harley-Davidson Motor Co., Inc., Jockey Int’l, Inc., Rockwell Automation, Inc. and Wisconsin Mfrs. & Commerce in Support of Defendants-Appellees; Brief of Amicus Curiae Hydro Engineering, Inc. on Rehearing En Banc in Support of Defendants-Appellees; Brief of Amici Curiae AT & T Mobility II LLC and T-Mobile USA, Inc. in Support of Defendants-Appellees; Brief of Amici Curiae Johnson & Johnson and Cordis Corp. in Support of Defendants-Appellees; Brief of Amici Curiae Garmin Int’l, Inc. et al. on Rehearing En Banc Supporting Defendants-Appellees.

. While these passages contemplate that es-toppel will be the primary situation where delay can bar an injunction, they also allow for the possibility that the facts surrounding delay can be so extreme — without establishing estoppel — as to preclude an injunction.