## BRENNAN v. HAWLEY PRODUCTS CO.
### No. 9901.

United States Court of Appeals
Seventh Circuit.

June 7, 1950.

Rehearing Denied July 11, 1950.

Joseph B. Brennan, pro se, James F. Sexton, Cleveland, Ohio, for appellant.

Richard L. Johnston, Lloyd C. Root, Chicago, Illinois, for appellee.

Before MAJOR, Chief Judge, and KERNER and FINNEGAN, Circuit Judges.

FINNEGAN, Circuit Judge.

The District Court dismissed the original and supplemental complaints of the plaintiff-appellant because of his laches. On this appeal, therefore, the question is whether or not the facts and circumstances disclosed by this record justify the order of the trial court.

The original complaint was filed on June 6, 1947. It charged infringement of United States patent No. 1923965, issued to plaintiff on August 22, 1933, and referred to throughout this record as the "diaphragm patent." The supplemental complaint was filed on March 31, 1948, and charged infringements on United States patent No. 1923966, issued to plaintiff on August 22, 1933, and referred to as the "method patent," and also patent No. 2090025, issued to plaintiff on August 17, 1937, and referred to as the "spider patent."

Defendant-appellee answered both complaints asserting as to all patents involved the affirmative defense of laches. Defenses of non-infringement and invalidity of each of the patents were also pleaded.

At a pre-trial conference, held on December 20, 1948, the parties agreed that a trial be had limited to the question of laches, the court retaining jurisdiction of the remaining issues for further consideration.

On the hearing before the court, the evidence disclosed that the plaintiff, Joseph B. Brennan is the owner of United States patents numbered 1923965, the diaphragm patent; 1923966, the method patent; and 2090025, the spider patent.

It appears that patent No. 1923965 was applied for on September 6, 1930, and was

issued on August 22, 1933. Patent No. 1923966 was applied for on September 6, 1930, and issued on August 22, 1933, while patent No. 2090025 was applied for on March 27, 1933, and was issued on August 17, 1937.

In 1933, the plaintiff was an employee of the Magnavox Company, and gave that company a non-exclusive, royalty free license under patents numbers 1923965 and 1923966.

In 1939, the plaintiff was the factory manager of the Weatherhead Company, in Cleveland, Ohio, and in May of that year became manager of the Romec Pump Company, which position he retained for about a year and a half. Thereafter the plaintiff became manager and executive vice president of the Bender Body Company, which was engaged in the manufacture of aircraft parts. In 1941, he had an interest in Fiber Form Company, of which he was one of the organizers, and that company received its first war contract in 1942. Plaintiff remained as manager of the Fiber Company until June 1946.

It further appears that in June 1946, plaintiff suffered a heart ailment which confined him to his bed for the remainder of that year. In December 1944, and continuing throughout the plaintiff's period of illness in 1946, the title to the patents here involved was placed in E. D. McCurdy, of Cleveland, who, as trustee, was handling plaintiff's affairs pertaining to these patents all during the period of plaintiff's illness.

Defendant was first charged with the infringement of patent No. 1923965 in 1934. The charge was made orally in a conversation which plaintiff had with Jesse B. Hawley, who was then president of the defendant company.

The plaintiff first charged defendant with infringement of patent No. 1923966 in 1937, and also in the same year made a second oral charge of infringement as to patent No. 1923965. When defendant was charged with these infringements it caused a search to be made to determine the validity of plaintiff's patents. As a result of that search the defendant's patent attorneys, Parkinson and Lane, forwarded to the plaintiff a letter dated June 11, 1937, which stated that both patents were invalid for lack of invention over the prior art.

On April 6, 1939, defendant received a letter from an attorney who then represented plaintiff, in which it was again charged with infringements of numbers 1923965 and 1923966.

The first written notice of infringement relative to patent No. 2090025 was sent to the defendant on June 26, 1946 by E. D. McCurdy, as trustee, owner of the patent at that time. In a letter dated September 16, 1946, the defendant's patent attorney wrote E. D. McCurdy denying the infringement of patent No. 2090025.

It further appears that McCurdy also gave written notice of infringement relating to patents numbers 1923965 and 1923966. This notice was given by letter from McCurdy and addressed to defendant's patent attorney.

It appears that in 1939, one Harold O. Clayton, a patent lawyer, was approached by plaintiff for the purpose of procuring him to represent plaintiff in matters pertaining to the patents here involved. Mr. Clayton had a conference with the patent attorney representing defendant in which he proposed to negotiate a non-exclusive license to defendant. This conversation was held on April 5, 1939, and defendant's patent attorney again denied the validity of the Brennan patents.

Plaintiff claimed to have had many meetings with Jesse B. Hawley, formerly president of the defendant company from 1937 until his death, but he was unable to set any specific date on which he discussed any of the patents in suit with Mr. Hawley. It further appears that plaintiff had known ever since 1939 that his controversy with the defendant company, relative to the patents here in suit, could never be settled without a law suit. On March 28, 1939, he states in a letter to an attorney, with whom he was consulting in reference to his patents: "It is my opinion that we shall not be able to effect a settlement without a suit being entered but I believe that after a suit has been entered Mr. Hawley

will settle as it goes to trial, because he knows the background of my work on this subject."

The record further discloses that from time to time since 1934, down to and including 1945, the plaintiff has conferred and corresponded with many attorneys, for the purpose of bringing suit, on a contingent basis, against the defendant for infringement of the patents here involved.

Jesse B. Hawley, former president of the defendant company, and Wallace R. Lane, former patent attorney for the company, appear to have been the only persons connected with the company with whom plaintiff ever discussed the patents here in suit. Both of these gentlemen are now deceased. Jesse B. Hawley died in March 1946, and Wallace R. Lane in May 1946, more than a year prior to the filing of the original complaint.

The record shows that the defendant company invested and expended large sums of money for the purchase of property in expanding its business in manufacturing diaphragms and spiders from 1937 until the date of the institution of this suit. It has continued in the manufacture of diaphragms and spiders ever since the first charge of infringement was made by plaintiff in 1934, and plaintiff knew all this and did nothing about it until his original complaint was filed in June 1947.

It further appears that the defendant company, through its patent attorneys, has consistently maintained that the Brennan patents are invalid.

Thus, it will be seen, a period of thirteen years elapsed from the time plaintiff first claimed infringement of the "diaphragm patent" until he instituted his original complaint. It likewise appears that the "method patent" was first alleged to be infringed in 1937. It was not brought into this case until 1948, a period of eleven years having elapsed. In the case of the "spider patent," the record shows that there was a written charge of infringement in 1946. But this patent was applied for by plaintiff in March 1933, and was issued on August 17, 1937. Plaintiff of course knew of the application, and as the record shows was, during the period from 1934 to 1937, concerned with the question as to whether the defendant was infringing his "diaphragm" and "method" patents. He states in his brief: that all three of these patents concerned a subject matter similar in nature; that the Brennan diaphragm might be manufactured by the Brennan method or in some other manner. It might be used with the Brennan spider or with any other spider. Conversely the Brennan spider might be used with any other diaphragm or with his own. He obviously was examining defendant's products to determine infringement. Under such circumstances he should be charged with knowledge of what was going on in the period from 1934 to 1937.

The defendant's apparatus has been on the open market since long before 1937. Plaintiff had knowledge of what was taking place in the radio industry. He was employed by Magnavox Company. In 1937 he knew, or should have known, of the construction of spiders manufactured by the defendant company. Hence it is fair to say that eleven years passed after plaintiff knew of the alleged infringement of his "spider patent" before he brought action to recover therefor.

In George J. Meyer Mfg. Co. v. Miller Mfg. Co., 24 F.2d 505, this court had occasion to consider the defenses of laches and estoppel in a patent infringement suit. In that case the patent involved issued in 1907. Defendant began making the alleged infringing machine in 1915. The suit for infringement was begun in 1922 by an assignee of the prior owners of the patent. We held, under the facts and circumstances of that case, that both laches and estoppel were established. Relying on the case of Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526, we said on page 508 of 24 F.2d referring to the defense of estoppel:

"Extinguishment of the patent right must be because appellants are estopped under the evidence to assert their rights.

"Upon a full consideration of all the evidence, we conclude that such is appellants' position. They not only knowingly sat by while appellee built up its large business in bottle washing machines, but, by

their conduct, they encouraged the belief that such business would be unmolested. * * *

"Appellants had full knowledge of appellee's infringements. They were under no handicap or disability—financial or otherwise—which prevented them from asserting and vindicating their rights under the patent. * * *"

In Wheatley v. Rex-Hide, Inc., 7 Cir., 102 F.2d 940, the patent involved was applied for on December 3, 1923. It was issued on March 15, 1927. Notice of infringement was first given the defendant by letter dated March 31, 1927. Defendant denied infringement by letter dated April 22, 1927. A second notice of infringement was given August 8, 1935, about eight years later. This was also denied and the patent was alleged to be invalid. Suit was instituted on July 25, 1936, about one year later.

During the eight-year period following the first infringement notice, defendant's product was widely distributed and advertised in the leading trade journals. Plaintiff it was declared was obviously aware of defendant's activities and of the production of the accused product. The trial judge thought the evidence established such laches on the part of the plaintiff as to bar his right to recover damages and also barred him from obtaining relief by way of injunction. We affirmed his judgment.

In Universal Coin Lock Co. v. American Sanitary Lock Co., 7 Cir., 104 F.2d 781, the patent involved issued in 1918. The defendant device which was charged to infringe that patent was first produced in 1922. In 1925 a person unconnected with plaintiff notified an employee of defendant of the alleged infringement. The matter was referred to an attorney who prepared and delivered an opinion which denied infringement. A second witness testified that he first learned of the infringement in 1929, but did not speak to anyone in defendant's employ until 1934 when the infringement was again denied. Suit was begun on June 10, 1936. It was dismissed by the District Court.

We there cited with approval the language in Westco-Chippewa Pump Co. v. Delaware Electric & Supply Co., 3 Cir., 64 F.2d 185, on page 187:

"The evidence does not disclose any excuse justifying this long delay. No case is an exact precedent for another because the facts in no two cases are exactly alike, but a uniform principle runs through all the cases. They proceed on the theory that the plaintiff knows his rights and has had ample opportunity to establish them in the proper forum; that, because of delay, the defendant has good reason to think that the plaintiff believes his asserted rights to be worthless or that he has abandoned them. * * * The position of the defendant is further fortified in this case by the opinion of reputable counsel. It could well assume that plaintiff's counsel had reached the same conclusion as its own. * * *

"The question of laches then assumes the aspect of the plaintiff having stood by and having done nothing to protect its rights for seven years while the defendant was building up a business, which it thought was legitimate, and spending money in constructing a large plant."

In the case at bar the record shows not only a long delay on the part of the plaintiff in instituting litigation on his claims of infringement, but also such a change in the condition of the defendant that it would be inequitable to allow plaintiff to enforce his claim for infringement. Not only has the defendant expended large sums of money in the extension of its manufacturing facilities, but two of its most important witnesses have passed away.

The plaintiff offers no legally adequate excuse for his inaction. Lack of funds is not claimed, certainly it is not now relied upon in the briefs filed on plaintiff's behalf. His civilian employment during the war period is certainly insufficient to justify his failure to act especially in face of the fact that he was, during that period, trying to contact an attorney who would undertake to prosecute his claim for infringement of these patents on a contingent basis.

■ It has been intimated on plaintiff's behalf that defendant might have resorted to the Federal Declaratory Judgment Act, 28 U.S.C.A. §§ 2201, 2202. We believe the trial court properly held that there is no burden on anybody to pursue the remedy afforded by the Declaratory Judgment Act. Plaintiff cites no authority to the contrary.

■ It developed from plaintiff-appellant's reply brief that on May 16, 1949, more than two months after judgment entered on March 16, 1949, and more than one month after plaintiff had filed his notice of appeal, he filed a motion for a new trial supported by certain affidavits attached thereto.

Rule 59(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. provides that a motion for a new trial shall be entered not later than ten days after the entry of the judgment.

The trial court correctly refused to allow the motion for new trial to be designated as a part of the record in this appeal.

We are convinced from examination of the record, and the evidence and exhibits submitted, that this cause was given careful and considerate attention by the District Court.

The order of that court is therefore affirmed.