(Slip Opinion) OCTOBER TERM, 2016 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## SCA HYGIENE PRODUCTS AKTIEBOLAG ET AL. *v.* FIRST QUALITY BABY PRODUCTS, LLC, ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

No. 15–927. Argued November 1, 2016—Decided March 21, 2017

In 2003, petitioners (collectively, SCA) notified respondents (collectively, First Quality) that their adult incontinence products infringed an SCA patent. First Quality responded that its own patent antedated SCA's patent and made it invalid. In 2004, SCA sought reexamination of its patent in light of First Quality's patent, and in 2007, the Patent and Trademark Office confirmed the SCA patent's validity. SCA sued First Quality for patent infringement in 2010. The District Court granted summary judgment to First Quality on the grounds of equitable estoppel and laches. While SCA's appeal was pending, this Court held that laches could not preclude a claim for damages incurred within the Copyright Act's 3-year limitations period. *Petrella* v. *Metro-Goldwyn-Mayer, Inc.*, 572 U. S. \_\_\_, \_\_\_. A Federal Circuit panel nevertheless affirmed the District Court's laches holding based on Circuit precedent, which permitted laches to be asserted against a claim for damages incurred within the Patent Act's 6-year limitations period, 35 U. S. C. §286. The en banc court reheard the case in light of *Petrella* and reaffirmed the original panel's laches holding.

*Held*: Laches cannot be invoked as a defense against a claim for damages brought within §286's 6-year limitations period. Pp. 3–16.

(a) *Petrella*'s holding rested on both separation-of-powers principles and the traditional role of laches in equity. A statute of limitations reflects a congressional decision that timeliness is better judged by a hard and fast rule instead of a case-specific judicial determination. Applying laches within a limitations period specified by Congress would give judges a "legislation-overriding" role that exceeds the Judiciary's power. 572 U. S., at \_\_\_. Moreover, applying laches within a limitations period would clash with the gap-filling purpose for

which the defense developed in the equity courts. Pp. 3–5.

(b) *Petrella*'s reasoning easily fits §286. There, the Court found in the Copyright Act's language a congressional judgment that a claim filed within three years of accrual cannot be dismissed on timeliness grounds. 572 U. S., at ___. By that same logic, §286 of the Patent Act represents Congress's judgment that a patentee may recover damages for any infringement committed within six years of the filing of the claim.

First Quality contends that this case differs from *Petrella* because a true statute of limitations runs forward from the date a cause of action accrues, whereas §286's limitations period runs backward from the filing of the complaint. However, *Petrella* repeatedly characterized the Copyright Act's limitations period as running backward from the date the suit was filed. First Quality also contends that a true statute of limitations begins to run when the plaintiff discovers a cause of action, which is not the case with §286's limitations period, but ordinarily, a statute of limitations begins to run on the date that the claim accrues, not when the cause of action is discovered. Pp. 5–8.

(c) The Federal Circuit based its decision on the idea that §282 of the Patent Act, which provides for "defenses in any action involving the validity or infringement of a patent," creates an exception to §286 by codifying laches as such a defense, and First Quality argues that laches is a defense within §282(b)(1) based on "unenforceability." Even assuming that §282(b)(1) incorporates a laches defense *of some dimension*, it does not necessarily follow that the defense may be invoked to bar a claim for damages incurred within the period set out in §286. Indeed, it would be exceedingly unusual, if not unprecedented, if Congress chose to include in the Patent Act both a statute of limitations for damages and a laches provision applicable to a damages claim. Neither the Federal Circuit, nor any party, has identified a single federal statute that provides such dual protection against untimely claims. Pp. 8–9.

(d) The Federal Circuit and First Quality rely on lower court patent cases decided before the 1952 Patent Act to argue that §282 codified a pre-1952 practice of permitting laches to be asserted against damages claims. But the most prominent feature of the relevant legal landscape at that time was the well-established rule that laches cannot be invoked to bar a claim for damages incurred within a limitations period specified by Congress. In light of this rule, which *Petrella* confirmed and restated, 572 U. S., at ___, nothing less than a broad and unambiguous consensus of lower court decisions could support the inference that §282(b)(1) codifies a very different patent-law-specific rule. Pp. 9–10.

Syllabus

(e) The Federal Circuit and First Quality rely on three types of cases: (1) pre-1938 equity cases; (2) pre-1938 claims at law; and (3) cases decided after the merger of law and equity in 1938. None of these establishes a broad, unambiguous consensus in favor of applying laches to damages claims in the patent context.

Many of the pre-1938 equity cases do not even reveal whether the plaintiff asked for damages, and of the cases in which damages were sought, many merely suggest in dicta that laches might limit damages. The handful of cases that apply laches against a damages claim are too few to establish a settled, national consensus. In any event, the most that can possibly be gathered from a pre-1938 equity case is that laches could defeat a damages claim *in an equity court*, not that the defense could entirely prevent a patentee from recovering damages.

Similarly, even if all three pre-1938 cases at law cited by First Quality squarely held that laches could be applied to a damages claim within the limitations period, that number would be insufficient to overcome the presumption that Congress legislates against the background of general common-law principles. First Quality argues that the small number of cases at law should not count against its position because there were few patent cases brought at law after 1870, but it is First Quality's burden to show that Congress departed from the traditional common-law rule.

As for the post-1938 patent case law, there is scant evidence supporting First Quality's claim that courts continued to apply laches to damages claims after the merger of law and equity. Only two Courts of Appeals held that laches could bar a damages claim, and that does not constitute a settled, uniform practice of applying laches to damages claims. Pp. 11–15.

(f) First Quality's additional arguments are unconvincing and do not require extended discussion. It points to post-1952 Court of Appeals decisions holding that laches can be invoked as a defense against a damages claim, but nothing that Congress has done since 1952 has altered §282's meaning. As for the various policy arguments presented here, this Court cannot overrule Congress's judgment based on its own policy views. Pp. 15–16.

807 F. 3d 1311, vacated in part and remanded.

ALITO, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, THOMAS, GINSBURG, SOTOMAYOR, and KAGAN, JJ., joined. BREYER, J., filed a dissenting opinion.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

―――――――

No. 15–927

―――――――

## SCA HYGIENE PRODUCTS AKTIEBOLAG, ET AL., PETITIONERS *v.* FIRST QUALITY BABY PRODUCTS, LLC, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

[March 21, 2017]

JUSTICE ALITO delivered the opinion of the Court.

We return to a subject that we addressed in *Petrella* v. *Metro-Goldwyn-Mayer, Inc.*, 572 U. S. \_\_\_ (2014): the relationship between the equitable defense of laches and claims for damages that are brought within the time allowed by a statute of limitations. In *Petrella*, we held that laches cannot preclude a claim for damages incurred within the Copyright Act's 3-year limitations period. *Id.*, at \_\_\_ (slip op., at 1). "[L]aches," we explained, "cannot be invoked to bar legal relief" "[i]n the face of a statute of limitations enacted by Congress." *Id.*, at \_\_\_ (slip op., at 13). The question in this case is whether *Petrella*'s reasoning applies to a similar provision of the Patent Act, 35 U. S. C. §286. We hold that it does.

I

Petitioners SCA Hygiene Products Aktiebolag and SCA Personal Care, Inc. (collectively, SCA), manufacture and sell adult incontinence products. In October 2003, SCA sent a letter to respondents (collectively, First Quality), alleging that First Quality was making and selling prod-

ucts that infringed SCA's rights under U. S. Patent No.
6,375,646 B1 ('646 patent). App. 54a. First Quality re-
sponded that one of *its* patents—U. S. Patent No.
5,415,649 (Watanabe patent)—antedated the '646 patent
and revealed "the same diaper construction." *Id.*, at 53a.
As a result, First Quality maintained, the '646 patent was
invalid and could not support an infringement claim. *Ibid.*
SCA sent First Quality no further correspondence regard-
ing the '646 patent, and First Quality proceeded to develop
and market its products.

In July 2004, without notifying First Quality, SCA
asked the Patent and Trademark Office (PTO) to initiate a
reexamination proceeding to determine whether the '646
patent was valid in light of the Watanabe patent. *Id.*, at
49a–51a. Three years later, in March 2007, the PTO
issued a certificate confirming the validity of the '646
patent.

In August 2010, SCA filed this patent infringement
action against First Quality. First Quality moved for
summary judgment based on laches and equitable estop-
pel, and the District Court granted that motion on both
grounds. 2013 WL 3776173, *12 (WD Ky., July 16, 2013).

SCA appealed to the Federal Circuit, but before the
Federal Circuit panel issued its decision, this Court de-
cided *Petrella.* The panel nevertheless held, based on a Fed-
eral Circuit precedent, *A. C. Aukerman Co.* v. *R. L.
Chaides Constr. Co.*, 960 F. 2d 1020 (1992) (en banc), that
SCA's claims were barred by laches.[1]

The Federal Circuit then reheard the case en banc in
order to reconsider *Aukerman* in light of *Petrella.* But in a
6-to-5 decision, the en banc court reaffirmed *Aukerman*'s
holding that laches can be asserted to defeat a claim for

―――――――――

[1] The panel reversed the District Court's holding on equitable estop-
pel, concluding that there are genuine disputes of material fact relating
to that defense. 767 F. 3d 1339, 1351 (2014).

damages incurred within the 6-year period set out in the Patent Act. As it had in *Aukerman*, the en banc court concluded that Congress, in enacting the Patent Act, had "codified a laches defense" that "barred recovery of legal remedies." 807 F. 3d 1311, 1323–1329 (2015). Judge Hughes, joined by four other judges, dissented.[2] *Id.*, at 1337–1342 (opinion concurring in part and dissenting in part). We granted certiorari. 578 U. S. \_\_\_ (2016).

## II

Laches is "a defense developed by courts of equity" to protect defendants against "unreasonable, prejudicial delay in commencing suit." *Petrella, supra*, at \_\_\_, \_\_\_ (slip op., at 1, 12). See also 1 D. Dobbs, Law of Remedies §2.3(5), p. 89 (2d ed. 1993) (Dobbs) ("The equitable doctrine of laches bars the plaintiff whose unreasonable delay in prosecuting a claim or protecting a right has worked a prejudice to the defendant"). Before the separate systems of law and equity were merged in 1938, the ordinary rule was that laches was available only in equity courts.[3] See *County of Oneida* v. *Oneida Indian Nation of N. Y.*, 470 U. S. 226, 244, n. 16 (1985). This case turns on the application of the defense to a claim for damages, a quintessential legal remedy. We discussed this subject at length in

---

[2] The dissenting judges concurred in the portion of the majority opinion relating to the application of laches to equitable relief. 807 F. 3d, at 1333, n. 1 (opinion of Hughes, J.); see also *id.*, at 1331–1333 (majority opinion). We do not address that aspect of the Federal Circuit's judgment. Nor do we address the Federal Circuit's reversal of the District Court's equitable estoppel holding. *Id.*, at 1333 (reinstating original panel holding on equitable estoppel).

[3] "The federal courts always had equity powers as well as law power, but they operated, until the Federal Rules of Civil Procedure, by distinctly separating equity cases and even had separate equity rules." 1 Dobbs §2.6(1), at 148, n. 2; see also *Gulfstream Aerospace Corp.* v. *Mayacamas Corp.*, 485 U. S. 271, 279 (1988). It is in this sense that we refer in this opinion to federal courts as equity or law courts.

*Petrella.*

*Petrella* arose out of a copyright dispute relating to the film Raging Bull. 572 U. S., at ___ (slip op., at 8). The Copyright Act's statute of limitations requires a copyright holder claiming infringement to file suit "within three years after the claim accrued." 17 U. S. C. §507(b). In *Petrella*, the plaintiff sought relief for alleged acts of infringement that accrued within that 3-year period, but the lower courts nevertheless held that laches barred her claims. See 695 F. 3d 946 (CA9 2012). We reversed, holding that laches cannot defeat a damages claim brought within the period prescribed by the Copyright Act's statute of limitations. *Petrella,* 572 U. S., at ___–___ (slip op., at 11–14). And in so holding, we spoke in broad terms. See *id.*, at ___ (slip op., at 13) ("[I]n the face of a statute of limitations enacted by Congress, laches cannot be invoked to bar legal relief").

*Petrella*'s holding rested on both separation-of-powers principles and the traditional role of laches in equity. Laches provides a shield against untimely claims, *id.*, at ___ (slip op., at 19), and statutes of limitations serve a similar function. When Congress enacts a statute of limitations, it speaks directly to the issue of timeliness and provides a rule for determining whether a claim is timely enough to permit relief. *Id.*, at ___ (slip op., at 11). The enactment of a statute of limitations necessarily reflects a congressional decision that the timeliness of covered claims is better judged on the basis of a generally hard and fast rule rather than the sort of case-specific judicial determination that occurs when a laches defense is asserted. Therefore, applying laches within a limitations period specified by Congress would give judges a "legislation-overriding" role that is beyond the Judiciary's power. *Id.*, at ___ (slip op., at 14). As we stressed in *Petrella*, "courts are not at liberty to jettison Congress' judgment on the timeliness of suit." *Id.*, at ___ (slip op., at 1).

Applying laches within the limitations period would also clash with the purpose for which the defense developed in the equity courts. As *Petrella* recounted, the "principal application" of laches "was, and remains, to claims of an equitable cast for which the Legislature has provided no fixed time limitation." *Id.*, at \_\_\_ (slip op., at 12); see also R. Weaver, E. Shoben, & M. Kelly, Principles of Remedies Law 21 (2d ed. 2011); 1 Dobbs §2.4(4), at 104; 1 J. Story, Commentaries on Equity Jurisprudence §55(*a*), p. 73 (2d ed. 1839). Laches is a gap-filling doctrine, and where there is a statute of limitations, there is no gap to fill.[4] *Petrella*, *supra,* at \_\_\_ (slip op., at 14); see also 1 Dobbs §2.4(4), at 108 ("[I]f the plaintiff has done only what she is permitted to do by statute, and has not misled the defendant [so as to trigger equitable estoppel], the basis for barring the plaintiff seems to have disappeared").

With *Petrella*'s principles in mind, we turn to the present dispute.

## III

## A

Although the relevant statutory provisions in *Petrella* and this case are worded differently, *Petrella*'s reasoning easily fits the provision at issue here. As noted, the statute in *Petrella* precludes a civil action for copyright infringement "unless it is commenced within three years

———————————

[4] The dissent argues that there is a "gap" in the statutory scheme because the Patent Act's statute of limitations might permit a patentee to wait until an infringing product has become successful before suing for infringement. *Post*, at 2–3 (opinion of BREYER, J.). We rejected a version of this argument in *Petrella*, 572 U. S., at \_\_\_–\_\_\_ (slip op., at 16–17), and we do so here. The dissent's argument implies that, insofar as the lack of a laches defense could produce policy outcomes judges deem undesirable, there is a "gap" for laches to fill, notwithstanding the presence of a statute of limitations. That is precisely the kind of "legislation-overriding" judicial role that *Petrella* rightly disclaimed. *Id.*, at \_\_\_ (slip op., at 14).

after the claim accrued." 17 U. S. C. §507(b). We saw in this language a congressional judgment that a claim filed within three years of accrual cannot be dismissed on timeliness grounds. 572 U. S., at ___ (slip op., at 11); see also *id.*, at ___–___ (slip op., at 14–15).

The same reasoning applies in this case. Section 286 of the Patent Act provides: "Except as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action." By the logic of *Petrella*, we infer that this provision represents a judgment by Congress that a patentee may recover damages for any infringement committed within six years of the filing of the claim.

B

First Quality contends that this case differs from *Petrella* because §286 of the Patent Act is not a *true* statute of limitations. A true statute of limitations, we are told, "runs forward from the date a cause of action accrues," but §286 "runs backward from the time of suit." Brief for Respondents 41.

*Petrella* cannot reasonably be distinguished on this ground. First Quality thinks it critical that §286 "runs backward from the time of suit," Brief for Respondents 41, but *Petrella* described the Copyright Act's statute of limitations in almost identical terms. We said that this provision "allows plaintiffs . . . to gain retrospective relief *running only three years back from the date the complaint was filed.*" 572 U. S., at ___ (slip op., at 6–7) (emphasis added). See also *id.*, at ___ (slip op., at 11) ("[A] successful plaintiff can gain retrospective relief only three years back from the time of suit"). And we described the Copyright Act's statute of limitations as "a three-year look-back limitations period." *Id.*, at ___ (slip op., at 4).

First Quality contends that the application of a true

statute of limitations, like the defense of laches (but unlike §286), takes into account the fairness of permitting the adjudication of a *particular* plaintiff's claim. First Quality argues as follows: "When Congress enacts [a true statute of limitations], it can be viewed as having made a considered judgment about how much delay may occur after a plaintiff knows of a cause of action (*i.e.*, after accrual) before the plaintiff must bring suit—thus potentially leaving no room for judges to evaluate the reasonableness of a plaintiff's delay on a case-by-case basis under laches." Brief for Respondents 42. According to First Quality, §286 of the Patent Act is different because it "turns only on when the infringer is sued, regardless of when the patentee learned of the infringement." *Ibid.*

This argument misunderstands the way in which statutes of limitations generally work. First Quality says that the accrual of a claim, the event that triggers the running of a statute of limitations, occurs when "a plaintiff knows of a cause of action," *ibid.*, but that is not ordinarily true. As we wrote in *Petrella*, "[a] claim ordinarily accrues 'when [a] plaintiff has a complete and present cause of action.'" 572 U. S., at \_\_\_ (slip op., at 4); see *Graham County Soil & Water Conservation Dist.* v. *United States ex rel. Wilson*, 545 U. S. 409, 418–419 (2005). While some claims are subject to a "discovery rule" under which the limitations period begins when the plaintiff discovers or should have discovered the injury giving rise to the claim, that is not a universal feature of statutes of limitations. See, *e.g.*, *ibid.* (limitations period in 31 U. S. C. §3731(b)(1) begins to run when the cause of action accrues); *TRW Inc.* v. *Andrews*, 534 U. S. 19, 28 (2001) (same with regard to 15 U. S. C. §1681p). And in *Petrella*, we specifically noted that "we have not passed on the question" whether the Copyright Act's statute of limitations is governed by such a rule. 572 U. S., at \_\_\_, n. 4 (slip op., at 4, n. 4).

For these reasons, *Petrella* cannot be dismissed as appli-

cable only to what First Quality regards as true statutes of
limitations. At least for present purposes, nothing de-
pends on this debatable taxonomy. Compare *Automobile
Workers* v. *Hoosier Cardinal Corp.*, 383 U. S. 696, 704
(1966) (describing §286 as "enacting a uniform period of
limitations"); 1 Dobbs §2.4(4), at 107, and n. 33 (same),
with *A. Stucki Co.* v. *Buckeye Steel Castings Co.*, 963 F. 2d
360, 363, n. 3 (CA Fed. 1992) (Section 286 "is not, strictly
speaking, a statute of limitations"); *Standard Oil Co.* v.
*Nippon Shokubai Kagaku Co., Ltd.*, 754 F. 2d 345, 348
(CA Fed. 1985) ("[Section] 286 cannot properly be called a
'statute of limitations' in the sense that it defeats the right
to bring suit").

C

The Federal Circuit based its decision on a different
footing. Section 286 of the Patent Act begins with the
phrase "[e]xcept as otherwise provided by law," and ac-
cording to the Federal Circuit, §282 of the Act is a provi-
sion that provides otherwise. In its view, §282 creates an
exception to §286 by codifying laches as a defense to all
patent infringement claims, including claims for damages
suffered within §286's 6-year period. 807 F. 3d, at 1329–
1330. Section 282(b), which does not specifically mention
laches, provides in relevant part as follows:

> "The following shall be defenses in any action involv-
> ing the validity or infringement of a patent and shall
> be pleaded:
>     "(1) Noninfringement, absence of liability for in-
> fringement or unenforceability."

The en banc majority below never identified which word
or phrase in §282 codifies laches as a defense, but First
Quality argues that laches falls within §282(b)(1) because
laches is a defense based on "unenforceability." Brief for
Respondents 28–33.

Opinion of the Court

SCA disputes this interpretation of §282(b)(1), arguing that laches does not make a patent categorically unenforceable. Reply Brief 6–8; see *Aukerman*, 960 F. 2d, at 1030 ("Recognition of laches as a defense . . . does not affect the general enforceability of the patent against others"). We need not decide this question. Even if we assume for the sake of argument that §282(b)(1) incorporates a laches defense *of some dimension*, it does not necessarily follow that this defense may be invoked to bar a claim for damages incurred within the period set out in §286. Indeed, it would be exceedingly unusual, if not unprecedented, if Congress chose to include in the Patent Act both a statute of limitations for damages and a laches provision applicable to a damages claim. Neither the Federal Circuit, nor First Quality, nor any of First Quality's *amici* has identified a single federal statute that provides such dual protection against untimely claims.

### D

In holding that Congress codified a damages-limiting laches defense, the Federal Circuit relied on patent cases decided by the lower courts prior to the enactment of the Patent Act. After surveying these cases, the Federal Circuit concluded that by 1952 there was a well-established practice of applying laches to such damages claims and that Congress, in adopting §282, must have chosen to codify such a defense in §282(b)(1). 807 F. 3d, at 1321–1329. First Quality now presses a similar argument. We have closely examined the cases on which the Federal Circuit and First Quality rely, and we find that they are insufficient to support the suggested interpretation of the Patent Act. The most prominent feature of the relevant legal landscape at the time of enactment of the Patent Act was the well-established general rule, often repeated by this Court, that laches cannot be invoked to bar a claim for damages incurred within a limitations

period specified by Congress. See *Holmberg* v. *Armbrecht*, 327 U. S. 392, 395 (1946) ("If Congress explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the matter"); *United States* v. *Mack*, 295 U. S. 480, 489 (1935) ("Laches within the term of the statute of limitations is no defense at law"); *Wehrman* v. *Conklin*, 155 U. S. 314, 326 (1894) ("Though a good defense in equity, laches is no defense at law. If the plaintiff at law has brought his action within the period fixed by the statute of limitations, no court can deprive him of his right to proceed"); *Cross* v. *Allen*, 141 U. S. 528, 537 (1891) ("So long as the demands secured were not barred by the statute of limitations, there could be no laches in prosecuting a suit"). *Petrella* confirmed and restated this long-standing rule. 572 U. S., at ___ (slip op., at 12) ("[T]his Court has cautioned against invoking laches to bar legal relief"). If Congress examined the relevant legal landscape when it adopted 35 U. S. C. §282, it could not have missed our cases endorsing this general rule.

The Federal Circuit and First Quality dismiss the significance of this Court's many reiterations of the general rule because they were not made in patent cases. But as the dissenters below noted, "[p]atent law is governed by the same common-law principles, methods of statutory interpretation, and procedural rules as other areas of civil litigation." 807 F. 3d, at 1333 (opinion of Hughes, J.).

In light of the general rule regarding the relationship between laches and statutes of limitations, nothing less than a broad and unambiguous consensus of lower court decisions could support the inference that §282(b)(1) codifies a very different patent-law-specific rule. No such consensus is to be found.[5]

————————

[5] Because we conclude that First Quality fails to show that there was a special laches rule in the patent context, we need not address whether it is ever reasonable to assume that Congress legislated against the

Opinion of the Court

## IV

The pre-1952 cases on which First Quality relies fall into three groups: (1) cases decided by equity courts before 1938; (2) cases decided by law courts before 1938; and (3) cases decided after the merger of equity and law in 1938. We will discuss each group separately.

### A

#### Pre-1938 equity cases

The pre-1938 equity cases are unpersuasive for several, often overlapping reasons. Many do not even reveal whether the plaintiff asked for damages. Indeed, some say nothing at all about the form of relief that was sought, see, *e.g.*, *Cummings* v. *Wilson & Willard Mfg. Co.*, 4 F. 2d 453 (CA9 1925), and others state only that the plaintiff wanted an accounting of profits, *e.g.*, *Westco-Chippewa Pump Co.* v. *Delaware Elec. & Supply Co.*, 64 F. 2d 185, 186 (CA3 1933); *Wolf Mineral Process Corp.* v. *Minerals Separation North Am. Corp.*, 18 F. 2d 483, 484 (CA4 1927). The equitable remedy of an accounting, however, was not the same as damages. The remedy of damages seeks to compensate the victim for its loss, whereas the remedy of an accounting, which Congress abolished in the patent context in 1946,[6] sought disgorgement of ill-gotten profits. See *Birdsall* v. *Coolidge*, 93 U. S. 64, 68–69 (1876); 1 Dobbs §4.3(5), at 611 ("Accounting holds the defendant liable for his profits, not for damages"); A. Walker, Patent

───────────

background of a lower court consensus rather than the contrary decisions of this Court. Cf. 807 F. 3d, at 1338 (opinion of Hughes, J.) ("For even if there were differing views in the lower [federal] courts, it would be nearly impossible to conclude that there was a uniform understanding of the common law that was inconsistent with Supreme Court precedent. In our judicial system, the Supreme Court's understanding is controlling").

[6] See 60 Stat. 778; see also *Aro Mfg. Co.* v. *Convertible Top Replacement Co.*, 377 U. S. 476, 505 (1964).

Laws §573, p. 401 (1886) (distinguishing between the two remedies); G. Curtis, Law of Patents §341(*a*), p. 461 (4th ed. 1873); 2 J. Pomeroy, Treatise on Equitable Remedies §568, p. 977 (1905).

First Quality argues that courts sometimes used the term "accounting" imprecisely to refer to both an accounting of profits and a calculation of damages, Brief for Respondents 19–20, but even if that is true, this loose usage shows only that a reference to "accounting" *might* refer to damages. For that reason, the Federal Circuit did not rely on cases seeking only an accounting, 807 F. 3d, at 1326, n. 7, and we likewise exclude such cases from our analysis.

Turning to the cases that actually refer to damages, we note that many of the cases merely suggest in dicta that laches might limit recovery of damages. See, *e.g.*, *Hartford-Empire Co.* v. *Swindell Bros.*, 96 F. 2d 227, 233, modified on reh'g, 99 F. 2d 61 (CA4 1938). Such dicta "settles nothing." *Jama* v. *Immigration and Customs Enforcement*, 543 U. S. 335, 351, n. 12 (2005). See also *Hartford Underwriters Ins. Co.* v. *Union Planters Bank, N. A.*, 530 U. S. 1, 9–10 (2000); *Metropolitan Stevedore Co.* v. *Rambo*, 515 U. S. 291, 300 (1995).

As for the cases in which laches was actually held to bar a claim for damages, *e.g.*, *Wolf, Sayer & Heller* v. *United States Slicing Mach. Co.*, 261 F. 195, 197–198 (CA7 1919); *A. R. Mosler & Co.* v. *Lurie*, 209 F. 364, 369–370 (CA2 1913), these cases are too few to establish a settled, national consensus. See *Hartford Underwriters, supra*, at 10.

Moreover, the most that can possibly be gathered from a pre-1938 equity case is that laches could defeat a damages claim *in an equity court*, not that the defense could entirely prevent a patentee from recovering damages. Before 1870, a patentee wishing to obtain both an injunction against future infringement and damages for past infringement was required to bring two suits, one in an

equity court (where injunctive relief but not damages was available), and one in a court of law (where damages but not injunctive relief could be sought). See Beauchamp, The First Patent Litigation Explosion, 125 Yale L. J. 848, 913–914 (2016). To rectify this situation, Congress enacted a law in 1870 authorizing equity courts to award damages in patent-infringement actions. Rev. Stat. §4921. And although statutes of limitations did not generally apply in equity, Congress in 1897 enacted a statute that, like the current §286, imposed a 6-year limitations period for damages claims and made that statute applicable in both law and equity. §6, 29 Stat. 694. Pointing to cases decided between 1897 and 1938 in which an equity court permitted a defendant in an infringement case to invoke the defense of laches, First Quality contends that Congress, aware of these cases, assumed that the 1952 Act would likewise allow a defendant in an infringement case to claim laches with respect to a claim for damages occurring within a limitations period.

This argument overlooks the fact that a patentee, during the period in question, could always sue for damages in law, where the equitable doctrine of laches did not apply, and could thus avoid any possible laches defense. Thus, accepting First Quality's argument would not return patentees to the position they held from 1897 to 1938. Instead, it would go much further and permit laches entirely to defeat claims like SCA's.[7]

## B

### Pre-1938 claims at law

First Quality cites three Court of Appeals cases in which

---

[7] The dissent misunderstands this point and thinks that we dismiss the relevance of the equity cases because they applied laches "to equitable claims without statutes of limitations." *Post*, at 5. But we are well aware that a statute of limitations applied in equity when these cases arose. See *supra*, at 13.

laches was raised in a proceeding at law and in which, according to First Quality, the defense was held to bar a damages claim. See *Universal Coin Lock Co.* v. *American Sanitary Lock Co.*, 104 F. 2d 781 (CA7 1939); *Banker* v. *Ford Motor Co.*, 69 F. 2d 665 (CA3 1934); *Ford* v. *Huff*, 296 F. 652 (CA5 1924). But even if all of these cases squarely held that laches could be applied to a damages claim at law within the limitations period, they would still constitute only a handful of decisions out of the corpus of pre-1952 patent cases, and that would not be enough to overcome the presumption that Congress legislates against the background of general common-law principles. See H. McClintock, Handbook of the Principles of Equity §28, p. 75 (2d ed. 1948) ("The majority of the courts which have considered the question have refused to enjoin an action at law on the ground of the laches of the plaintiff at law").

In any event, these cases, like the equity cases, offer minimal support for First Quality's position. Not one of these cases even mentions the statute of limitations. One of the three, *Ford*, is not even a patent infringement case; it is a breach-of-contract case arising out of a patent dispute, 296 F., at 654, and it is unclear whether the ground for decision was laches or equitable estoppel. See 807 F. 3d, at 1340 (opinion of Hughes, J.). Another, *Universal Coin,* applied laches to a legal damages claim without any analysis of the propriety of doing so. 104 F. 2d, at 783.

First Quality protests that the paucity of supporting cases at law should not count against its argument since very few patent-infringement cases were brought at law after 1870. Brief for Respondents 25–26. But the fact remains that it is First Quality's burden to show that Congress departed from the traditional common-law rule highlighted in our cases.[8]

_____

[8] For the same reason, the dissent misses the mark when it demands that we cite cases "holding that laches could *not* bar a patent claim for

## C

## Post-merger cases

First Quality claims that courts continued to apply laches to damages claims after the merger of law and equity in 1938, but First Quality's evidence is scant. During this period, two Courts of Appeals stated in dicta that laches could bar legal damages claims. See *Chicago Pneumatic Tool Co.* v. *Hughes Tool Co.*, 192 F. 2d 620, 625 (CA10 1951); *Shaffer* v. *Rector Well Equip. Co.*, 155 F. 2d 344, 347 (CA5 1946). And two others actually held that laches could bar a damages claim. See, *e.g.*, *Brennan* v. *Hawley Prods. Co.*, 182 F. 2d 945, 948 (CA7 1950); *Lukens Steel Co.* v. *American Locomotive Co.*, 197 F. 2d 939, 941 (CA2 1952) (alternative holding). This does not constitute a settled, uniform practice of applying laches to damages claims.

After surveying the pre-1952 case law, we are not convinced that Congress, in enacting §282 of the Patent Act, departed from the general rule regarding the application of laches to damages suffered within the time for filing suit set out in a statute of limitations.

## V

First Quality's additional arguments do not require extended discussion. First Quality points to post-1952 Court of Appeals decisions holding that laches can be invoked as a defense against a damages claim. Noting that Congress has amended §282 without altering the "'unenforceability'" language that is said to incorporate a laches defense, First Quality contends that Congress has implicitly ratified these decisions. Brief for Respondents 35–36.

We reject this argument. Nothing that Congress has done since 1952 has altered the meaning of §282. See

───────────

damages." *Post*, at 8.

*Central Bank of Denver, N. A.* v. *First Interstate Bank of Denver, N. A.,* 511 U. S. 164, 186 (1994); *West Virginia Univ. Hospitals, Inc.* v. *Casey,* 499 U. S. 83, 100, 101, and n. 7 (1991).

First Quality and its supporting *amici* also make various policy arguments, but we cannot overrule Congress's judgment based on our own policy views. We note, however, as we did in *Petrella*, that the doctrine of equitable estoppel provides protection against some of the problems that First Quality highlights, namely, unscrupulous patentees inducing potential targets of infringement suits to invest in the production of arguably infringing products. 572 U. S., at ___ (slip op., at 19). Indeed, the Federal Circuit held that there are genuine disputes of material fact as to whether equitable estoppel bars First Quality's claims in this very case. See 807 F. 3d, at 1333.

*       *       *

Laches cannot be interposed as a defense against damages where the infringement occurred within the period prescribed by §286. The judgment of the Court of Appeals is vacated in part, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

———————

No. 15–927

———————

## SCA HYGIENE PRODUCTS AKTIEBOLAG, ET AL., PETITIONERS *v.* FIRST QUALITY BABY PRODUCTS, LLC, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

[March 21, 2017]

JUSTICE BREYER, dissenting.

Laches is a doctrine that bars a plaintiff's claim when there has been unreasonable, prejudicial delay in commencing suit. See 1 D. Dobbs, Law of Remedies §2.3(5), p. 89 (2d ed. 1993). The question before us is whether a court can apply this doctrine in a patent infringement action for damages brought within the statute of limitations. The Court holds that a court cannot. Laches, it says, is a "gap-filling doctrine," generally applicable where there is no statute of limitations. But the 1952 Patent Act contains a statute of limitations. Hence there is "no gap to fill." *Ante*, at 5.

In my view, however, the majority has ignored the fact that, despite the 1952 Act's statute of limitations, there remains a "gap" to fill. See *infra*, at 2–3. Laches fills this gap. And for more than a century courts with virtual unanimity have applied laches in patent damages cases. Congress, when it wrote the 1952 statute, was aware of and intended to codify that judicial practice. I fear that the majority, in ignoring this legal history, opens a new "gap" in the patent law, threatening harmful and unfair legal consequences.

## I

Consider the relevant statutory language. Section 286 of the Patent Act says: "*Except as otherwise provided by law*, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action." 35 U. S. C. §286 (emphasis added). Section 282 says what the word "otherwise" means. It tells us that "unenforceability" shall be a defense "in *any* action involving the validity or infringement of a patent." §282(b) (emphasis added).

Two features of this statutory language are important. First, the limitations provision, unlike those in many other statutes, does *not* set forth a period of time in which to sue, beginning when a claim accrues and then expiring some time later. (The False Claims Act, for example, gives a plaintiff six years from the date of the violation or three years from the date of discovery to file his suit, 31 U. S. C. §3731(b).) Rather, it permits a patentee to sue at any time after an infringement takes place. It simply limits damages to those caused within the preceding six years. That means that a patentee, after learning of a possible infringement in year 1, might wait until year 10 or year 15 or year 20 to bring a lawsuit. And if he wins, he can collect damages for the preceding six years of infringement.

This fact creates a gap. Why? Because a patentee might wait for a decade or more while the infringer (who perhaps does not know or believe he is an infringer) invests heavily in the development of the infringing product (of which the patentee's invention could be only a small component), while evidence that the infringer might use to, say, show the patent is invalid disappears with time. Then, if the product is a success, the patentee can bring his lawsuit, hoping to collect a significant recovery. And if business-related circumstances make it difficult or impossible for the infringer to abandon its use of the patented

invention (*i.e.*, if the infringer is "locked in"), then the patentee can keep bringing lawsuits, say, in year 10 (collecting damages from years 4 through 10), in year 16 (collecting damages from years 10 through 16), and in year 20 (collecting any remaining damages). The possibility of this type of outcome reveals a "gap." Laches works to fill the gap by barring recovery when the patentee unreasonably and prejudicially delays suit.

Second, the Patent Act's language strongly suggests that Congress, when writing the statutory provisions before us, intended to permit courts to continue to use laches to fill this gap. The statute says that there are "except[ions]" to its 6-year damages limitation rule. It lists "unenforceability" as one of those exceptions. At common law, the word "unenforceability" had a meaning that encompassed laches. See, *e.g., United States* v. *New Orleans Pacific R. Co.*, 248 U. S. 507, 511 (1919) (considering whether an agreement "had become unenforceable by reason of inexcusable laches"). We often read statutes as incorporating common-law meanings. See *Neder* v. *United States*, 527 U. S. 1, 21 (1999). And here there are good reasons for doing so. For one thing, the principal technical drafter of the Patent Act (in a commentary upon which this Court has previously relied, *e.g.*, *Warner-Jenkinson Co.* v. *Hilton Davis Chemical Co.*, 520 U. S. 17, 28 (1997)) stated that §282 was meant to codify "equitable defenses such as laches." P. Federico, Commentary on the New Patent Act, 35 U. S. C. A. 1, 55 (West 1954). For another thing, there is a long history of prior case law that shows with crystal clarity that Congress intended the statute to keep laches as a defense.

II

The pre-1952 case law that I shall discuss is directly relevant because, as this Court has recognized, the 1952 Patent Act was primarily intended to codify existing law.

See *Halo Electronics* v. *Pulse Electronics, Inc.*, 579 U. S.
\_\_\_, \_\_\_ (2016) (slip op., at 4); accord, H. R. Rep. No. 1923,
82d Cong., 2d Sess., 3 (1952) (stating that the "main pur-
pose" of the Patent Act was "codification and enactment"
of existing law); 98 Cong. Rec. 9323 (1952) (drafter of the
Act stating that it was generally intended to "codif[y] the
present patent laws").

Now consider the existing law that the Patent Act's
drafters intended the Act to reflect. The decisions that
find or say or hold that laches can bar monetary relief in
patent infringement actions stretch in a virtually unbro-
ken chain from the late 19th century through the Patent
Act's enactment in 1952. They number in the dozens and
include every federal appeals court to have considered the
matter. (We have found only two contrary decisions, both
from the same District Court: *Thorpe* v. *Wm. Filene's Sons
Co.*, 40 F. 2d 269 (Mass. 1930); and *Concord* v. *Norton*, 16
F. 477 (CC Mass. 1883).)

Here are the cases from the Federal Courts of Appeals
alone: *Lukens Steel Co.* v. *American Locomotive Co.*, 197
F. 2d 939, 941 (CA2 1952); *Chicago Pneumatic Tool Co.* v.
*Hughes Tool Co.*, 192 F. 2d 620, 625 (CA10 1951); *Brennan*
v. *Hawley Prods. Co.*, 182 F. 2d 945, 948 (CA7 1950);
*Shaffer* v. *Rector Well Equip. Co.*, 155 F. 2d 344, 345–347
(CA5 1946); *Rome Grader & Mach. Corp.* v. *J. D. Adams
Mfg. Co.*, 135 F. 2d 617, 619–620 (CA7 1943); *France Mfg.
Co.* v. *Jefferson Elec. Co.*, 106 F. 2d 605, 609–610 (CA6
1939); *Universal Coin Lock Co.* v. *American Sanitary Lock
Co.*, 104 F. 2d 781, 781–783 (CA7 1939); *Union Shipbuild-
ing Co.* v. *Boston Iron & Metal Co.*, 93 F. 2d 781, 783 (CA4
1938); *Gillons* v. *Shell Oil Co. of Cal.*, 86 F. 2d 600, 608–
610 (CA9 1936); *Holman* v. *Oil Well Supply Co.*, 83 F. 2d
538 (CA2 1936) (*per curiam*); *Dock & Term. Eng. Co.* v.
*Pennsylvania R. Co.*, 82 F. 2d 19, 19–20 (CA3 1936);
*Banker* v. *Ford Motor Co.*, 69 F. 2d 665, 666 (CA3 1934);
*Westco-Chippewa Pump Co.* v. *Delaware Elec. & Supply*

*Co.*, 64 F. 2d 185, 186–188 (CA3 1933); *Window Glass Mach. Co.* v. *Pittsburgh Plate Glass Co.*, 284 F. 645, 650–651 (CA3 1933); *Dwight & Lloyd Sintering Co.* v. *Greenawalt*, 27 F. 2d 823, 827 (CA2 1928); *George J. Meyer Mfg. Co.* v. *Miller Mfg. Co.*, 24 F. 2d 505, 507–508 (CA7 1928); *Wolf Mineral Process Corp.* v. *Minerals Separation N. Am. Corp.*, 18 F. 2d 483, 490 (CA4 1927); *Cummings* v. *Wilson & Willard Mfg. Co.*, 4 F. 2d 453, 455 (CA9 1925); *Ford* v. *Huff*, 296 F. 652, 654–655 (CA5 1924); *Wolf, Sayer & Heller, Inc.* v. *United States Slicing Mach. Co.*, 261 F. 195, 197–198 (CA7 1919); *A. R. Mosler & Co.* v. *Lurie*, 209 F. 364, 371 (CA2 1913); *Safety Car Heating & Lighting Co.* v. *Consolidated Car Heating Co.*, 174 F. 658, 662 (CA2 1909) (*per curiam*); *Richardson* v. *D. M. Osborne & Co.*, 93 F. 828, 830–831 (CA2 1899); and *Woodmanse & Hewitt Mfg. Co.* v. *Williams*, 68 F. 489, 493–494 (CA6 1895).

The majority replies that this list proves nothing. After all, it says, nearly all of these decisions come from courts of equity. Courts of equity ordinarily applied laches "'to claims of an equitable cast for which the Legislature ha[d] provided no fixed time limitation,'" *ante*, at 5 (quoting *Petrella* v. *Metro-Goldwyn-Mayer, Inc.*, 572 U. S. ___, ___ (2014) (slip op., at 12)), not to requests for damages, "a quintessential legal remedy," *ante*, at 3. Since "laches is a gap-filling doctrine," the fact that it was applied to equitable claims without statutes of limitations says little about whether it should apply to legal damages claims when "there is a statute of limitations," and therefore "no gap to fill." *Ante,* at 5.

Good reply. But no cigar. Why not? (1) Because in 1897 Congress *enacted a statute of limitations*—very much like the one before us now—for patent claims *brought in courts of equity*. Ch. 391, §6, 29 Stat. 694 ("[I]n any suit or action . . . there shall be no recovery of profits or damages for any infringement committed more than six years before" filing). Thus, after 1897, *there was no statute of*

*limitations gap for equity courts to fill*, and yet they continued to hold that laches applied.  See, *e.g.*, *France Mfg.*, *supra*, at 609 ("[N]otwithstanding the statute of limitations, relief may be denied on the ground of laches . . . "); *Dwight & Lloyd*, *supra*, at 827 (Hand, J.) (explaining how laches operates in conjunction with the statute of limitations to allow an infringer to "garne[r] the harvest of even the earliest of the 6 years to which recovery is in any event limited, with just confidence that he will not be disturbed").

(2) Because in 1870 Congress enacted a statute that gave courts of equity the power to award legal relief, namely, damages, in patent cases.  Act of July 8, 1870, §55, 16 Stat. 206.  Congress did not give law courts an equivalent power to grant injunctive relief in patent suits. As a result, from the late 19th century until the merger of law and equity in 1938, nearly all patent litigation— including suits for damages—took place in courts of equity that were applying laches in conjunction with a statute of limitations.  See Lemley, Why Do Juries Decide If Patents Are Valid? 99 Va. L. Rev. 1673, 1704 (2013) (discussing the predominance of equity litigation).

(3) Because Congress recognized that damages suits for patent infringement took place almost exclusively in equity courts, not law courts.  Whenever Congress wished to modify patent damages law, it rewrote the statutory provisions governing damages in equity, not law.  See*, e.g.*, §8, 42 Stat. 392 (modifying the equity damages statute to allow equity courts to award a "reasonable sum" even if a patentee had difficulty proving actual damages, but making no change to the legal damages provision).  The 1952 Congress, seeking to understand whether, or how, laches applied in patent damages cases, would almost certainly have looked to equity practice.

(4) Because, in any event, in those few pre-law/equity-merger cases in which courts of *law* considered whether

laches could bar a patent damages action, they, like their equity counterparts, held that it could. See *Universal Coin*, 104 F. 2d, at 781–783; *Banker*, 69 F. 2d, at 666; *Ford*, *supra*, at 658. As the majority points out, these cases brought in law courts constitute "only a handful of decisions." *Ante,* at 13. But that is simply because, as I just noted, almost all patent damages litigation took place in courts of equity. Regardless, before the merger of law and equity both law courts and equity courts recognized laches as a defense. And, after the merger of law and equity in 1938, federal courts *still* applied laches to patent damages claims. *E.g.*, *Brennan*, 182 F. 2d, at 948 (holding that "laches on the part of the plaintiff" can "bar his right to recover damages"). This, of course, would make no sense if laches for patent damages was really an equity-only rule.

Does the majority have any other good reason to ignore the mountain of authority recognizing laches as a defense? It refers to many general statements in opinions and treatises that say that laches is "no defense at law." *United States* v. *Mack*, 295 U. S. 480, 489 (1935). But these statements are not about patent damages cases. They do not claim to encompass the problem at issue here. And they do not prevent Congress from enacting a statute that, recognizing patent litigation's history, combines a statute of limitations with a laches defense. And that is what Congress has done in the Patent Act.

The majority also tries to discredit the persuasiveness of the pre-Patent Act case law authority. It goes through the lengthy list of decisions, finding some judicial statements too vague, others just dicta, and still others having confused an equitable claim for "accounting" with a legal claim for "damages." I agree that it has found weaknesses in the reasoning of some individual cases. But those weaknesses were not sufficient to prevent a 1951 treatise writer from concluding, on the basis of the great weight of

authority, that in patent cases, "[l]aches . . . may be inter-
posed in an action at law." 3 A. Deller, Walker on Patents
106 (Cum. Supp. 1951).

In any event, with all its efforts, the majority is unable
to identify a single case—not one—from any court of ap-
peals sitting in law or in equity before the merger, or
sitting after the merger but before 1952, holding that
laches could *not* bar a patent claim for damages. Fur-
thermore, the majority concedes that it is unable to distin-
guish, by my count, at least six Court of Appeals cases
directly holding that laches *could* bar a patent claim for
damages. See *Wolf, Sayer & Heller*, 261 F. 195; *Lurie*, 209
F. 364; *Universal Coin, supra*; *Banker*, 69 F. 2d 665; *Bren-
nan, supra*; *Lukens*, 197 F. 2d 939. And that is the case
law situation that Congress faced when it wrote a statute
that, as we have said, sought primarily to codify existing
patent law. See *supra*, at 3–4.

The majority tries to minimize the overall thrust of this
case law by dividing the cases into subgroups and then
concluding that the number of undistinguishable prece-
dents in each subgroup is "too few to establish a settled,
national consensus." *Ante,* at 12. The problem with this
approach is that, once we look at the body of case law as a
whole, rather than in subgroups, we find what I have said
and repeated, namely, that *all the cases say the same
thing*: Laches applies. The majority's insistence on subdi-
vision makes it sound a little like a Phillies fan who an-
nounces that a 9–0 loss to the Red Sox was a "close one."
Why close? Because, says the fan, the Phillies lost each
inning by only one run.

For the sake of completeness I add that, since 1952,
every Federal Court of Appeals to consider the question
has held that laches remains available for damages claims
brought under the Patent Act. See *A. C. Aukerman Co.* v.
*R. L. Chaides Constr. Co.*, 960 F. 2d 1020, 1030 (CA Fed.
1992) (en banc). Yet, Congress has repeatedly reenacted

35 U. S. C. §282's "unenforceability" language without material change. See, *e.g.*, §§15(a), 20(g)(2)(B), 125 Stat. 328, 334. See also *Texas Dept. of Housing and Community Affairs* v. *Inclusive Communities Project, Inc.*, 576 U. S. \_\_\_, \_\_\_ (2015) (slip op., at 14) (holding that congressional reenactment provides "convincing support for the conclusion that Congress accepted and ratified the unanimous holdings of the Courts of Appeals"); *Microsoft Corp.* v. *i4i Ltd. Partnership,* 564 U. S. 91, 113–114 (2011) (when Congress has "often amended §282" while "le[aving] the Federal Circuit's interpretation of §282 in place," any further "recalibration" should be left to the Legislature).

## III

The majority's strongest argument is *Petrella.* There, the Court held that laches could not bar a damages claim brought within the Copyright Act's limitations period. The present case holds roughly the same in respect to the Patent Act, providing a degree of consistency.

There are relevant differences, however, between patent law and copyright law. For one thing, copyright law, unlike patent law, does not contain a century and a half of history during which courts held that laches and a statute of limitations could coexist. When Congress enacted the Patent Act in 1952, patent statutes had already contained a 6-year statute of limitations for 55 years (since 1897), during which time courts had continued to apply laches to patent damages cases. Copyright law, on the other hand, contained no federal statute of limitations until 1957. See *Petrella*, 572 U. S., at \_\_\_ (slip op., at 3).

For another thing, the Copyright Act, unlike the Patent Act, has express provisions that mitigate the unfairness of a copyright holder waiting for decades to bring his lawsuit. A copyright holder who tries to lie in wait to see if a defendant's investment will prove successful will discover that the Copyright Act allows that defendant to "prove and

offset against . . . profits 'deductible expenses' incurred in
generating those profits." *Id.*, at ___ (slip op., at 12) (quot-
ing 17 U. S. C. §504(b)). Thus, if the defendant invests say
$50 million in a film, a copyright holder who waits until
year 15 (when the film begins to earn a profit) to bring a
lawsuit may be limited to recovering the defendant's
profits less an apportioned amount of the defendant's
initial $50 million investment. But the Patent Act has no
such deduction provision.

Further, the Court, in *Petrella*, pointed out that the
evidentiary loss that occurs while a copyright holder waits
to bring suit is "at least as likely to affect plaintiffs as it is
to disadvantage defendants." 572 U. S., at ___ (slip op., at
18). But that symmetry does not exist to the same degree
in patent law. To win a copyright suit the copyright holder
must show that the defendant copied his work. The
death of witnesses and loss of documents from the time of
the alleged infringement can therefore significantly impair
the copyright holder's ability to prove his case. There is no
such requirement in a patent suit. Patent infringement is
a strict-liability offense: There need not be any copying,
only an end product (or process) that invades the area the
patentee has carved out in his patent.

At the same time, the passage of time may well harm
patent *defendants* who wish to show a patent invalid by
raising defenses of anticipation, obviousness, or insuffi-
ciency. These kinds of defenses can depend upon contem-
poraneous evidence that may be lost over time, and they
arise far more frequently in patent cases than any of their
counterparts do in copyright cases. See Brief for Electronic
Frontier Foundation et al. as *Amici Curiae* 23 (reporting
that of all copyright cases pending as of January 2009,
only 2.7% of judgment events resulted in a finding of a
lack of ownership or validity of the copyright at issue);
Allison, Lemley, & Schwartz, Understanding the Realities
of Modern Patent Litigation, 92 Texas L. Rev. 1769, 1778,

1784–1785 (2014) (finding that 70% of summary judgment motions in patent cases filed in 2008–2009 related to anticipation or obviousness). The upshot is an absence here of the symmetrical effect of delay upon which the Court relied in *Petrella.*

Finally, there is a "lock-in" problem that is likely to be more serious where patents are at issue. Once a business chooses to rely on a particular technology, it can become expensive to switch, even if it would have been cheap to do so earlier. See Lee & Melamed, Breaking the Vicious Cycle of Patent Damages, 101 Cornell L. Rev. 385, 409–410 (2016). As a result, a patentee has considerable incentive to delay suit until the costs of switching—and accordingly the settlement value of a claim—are high. The practical consequences of such delay can be significant, as the facts of this case illustrate: First Quality invested hundreds of millions of dollars in its allegedly infringing technologies during the years that SCA waited to bring its suit. App. to Pet. for Cert. 107a–108a. And *amici* have provided numerous other examples that suggest this fact pattern is far from uncommon. See Brief for Dell et al. 11–19.

I recognize the Majority's suggestion that the doctrine of "equitable estoppel" might help alleviate some of these problems. See *ante,* at 15. I certainly hope so. But I would be more "cautious before adopting changes that disrupt the settled expectations of the inventing community." *Festo Corp.* v. *Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U. S. 722, 739 (2002).

I add or confess that I believe that *Petrella* too was wrongly decided. Today's case helps illustrate why I think that *Petrella* started this Court down the wrong track. I would stop, finding adequate grounds to distinguish *Petrella.* But the majority remains "determined to stay the course and continue on, travelling even further away," *Mathis* v. *United States*, 579 U. S. \_\_\_, \_\_\_ (2016) (ALITO,

J., dissenting) (slip op., at 9), from Congress' efforts, in the
Patent Act, to promote the "Progress of Science and useful
Arts," U. S. Const., Art. I, §8, cl. 8.  Trite but true: Two
wrongs don't make a right.

With respect, I dissent.